## Board of Revision of Taxes of Philadelphia, Appellant, *v.* United Fund of the Philadelphia Area, Appellee.

202

Argued October 3, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*James M. Penny, Jr.*, Assistant City Solicitor, with him *John Mattioni*, Deputy City Solicitor, and *Martin Weinberg*, City Solicitor, for appellant.

*Benjamin M. Quigg, Jr.*, with him *Thomas O. Sadler, Jr.*, and, of counsel, *Morgan, Lewis & Bockius*, for appellee.

OPINION BY JUDGE KRAMER, December 19, 1973:

This is an appeal by the City of Philadelphia (City) from an order of the Court of Common Pleas of Philadelphia County dated February 16, 1973, wherein the court sustained an appeal of the United Fund of the Philadelphia Area (United Fund) from the denial of a real estate tax exemption by the Board of Revision of Taxes of Philadelphia (Board). The effect of the court's order was to grant a real estate tax exemption to United Fund for its land and relatively new seven-story office building located at 1710-14 Race Street in Philadelphia.

The court below held a hearing de novo, at which it received extensive testimony and evidence, after which it filed its findings, conclusions and order. In view of the fact that the City has not raised any questions concerning the court's findings, our scope of review is limited to a determination of whether the court committed an error of law. The only question raised by the City is whether the United Fund is a "purely public charity" entitled to a real estate tax exemption under the provisions of The General County Assessment Law, Act of May 22, 1933, P. L. 853, art. I, §§101 et seq., as amended, 72 P.S. §5020-101 et seq., or more specifically, under Section 204(i) of the Act, 72 P.S. §5020-204(i).

United Fund is a nonprofit corporation which had its origin some 50 years ago, and which was reorganized into its present structure and status in 1959. Its purposes are:

"a. to promote the health and social welfare of the people of Philadelphia and vicinity and develop programs commensurate with their needs;

"b. to raise funds in the counties of Philadelphia, Montgomery, Delaware and Chester, and other counties that may thereafter be included, for the support of the national, state and local health, social welfare and

other charitable agencies participating in its operations;

"c. to distribute funds among its participating agencies; and

"d. to conduct, support, sponsor or participate in studies, research, plans and projects in the fields of health, social welfare and charitable work, and to acquaint the public with operations, conditions, needs and problems in those fields."

United Fund, in effect, comprises some 250 member organizations, and during recent years has raised and distributed annually between $16,000,000 and $19,-000,000 for the benefit of such agencies. It utilizes the voluntary services of approximately 45,000 persons in the Philadelphia area to render health and social welfare services to more than 1.5 million persons in the Philadelphia area. The record is quite clear that no one obtains any personal profit from any of the operations of the United Fund, although there are paid, full-time employees and fund-raising expenses which amount to about eight percent of the total funds collected. The record also supports the court's finding that United Fund acquired the land, and constructed the building for the purpose of reducing its operating expenses, thereby permitting additional money collected to be available to the 250 agencies it services.

The United Fund leases part of its building to the Hospital Survey Committee, Inc. and the Health and Welfare Council, Inc., both of which are nonprofit corporations rendering health and social welfare services to their beneficiaries. United Fund, however, derives no profit from these leasing arrangements.

The City's sole contention is that the United Fund provides no direct benefit to any of its beneficiaries which they could not obtain for themselves; viz., the money the United Fund provides for them; and therefore, under its interpretation of the law, the United

Fund is not a "purely public charity." The City also argues that, even if we should determine the United Fund to be a "purely public charity," its two lessees are not "purely public charities," and therefore, that portion of the property should not be tax-exempt. For the reasons stated hereinafter, we find that the City's position is without merit.

Article VIII, Section 2(a) of the Pennsylvania Constitution of 1968 states, *inter alia*: "The General Assembly may by law exempt from taxation: . . . (v) Institutions of purely public charity. . . ."

The enabling statute is The General County Assessment Law, wherein Section 204, 72 P.S. §5020-204, in pertinent part provides:

"The following property shall be exempt from all county, city, borough, town, township, road, poor and school tax, to wit:

"(i) All real property owned by one or more institutions of *purely public charity,* used and occupied partly by such owner or owners and partly by such other institutions of purely public charity, and necessary for the occupancy and enjoyment of such institutions so using it. . . ." (Emphasis added.)

The underlying philosophy of this constitutional-legislative grant of tax exemption was set forth by our Supreme Court in *Y.M.C.A. of Germantown v. Philadelphia,* 323 Pa. 401, 413-14, 187 A. 204, 210 (1936) wherein it was stated: "Taxes are not penalties but are contributions which all inhabitants are expected to make (and may be compelled to make) for the support of the manifold activities of the government. Every inhabitant and every parcel of property receives governmental protection. Such protection costs money. When an inhabitant fails to contribute his share of the cost of this protection, some other inhabitant must contribute more than his fair share of that cost. . . . Any institution which by its charitable activities relieves the

government of part of this burden is conferring the pecuniary benefit upon the body politic, and in receiving exemption from taxation it is merely being given a 'quid pro quo' for its services in providing something which otherwise the government would have to provide. . . . The measure of an institution's gratuitous aid to those requiring it is the measure by which the government is relieved of its responsibilities." The City's position in this case is understandable when one realizes that the City must provide all sorts of governmental services (e.g., fire and police protection) for the United Fund property which is in reality used to render services to people, not only residents of Philadelphia but also to people of other counties and municipalities. While this fact of life must be recognized, the record in this case shows that a very high percentage of the services rendered by the United Fund and its beneficiary agencies is rendered within the city limits. While there is no statistical computation to prove that the tax revenues the City would hope to collect by taxing the United Fund property is equal to or less than the cost of governmental services which the City would otherwise have to provide for its citizens except for the services rendered by the United Fund, our reading of the record permits us to conclude that such city benefit does work to its favor.

We are cognizant of that body of case law holding that statutory provisions exempting property from taxation are subject to a strict construction rather than a liberal one. *See Y.M.C.A. v. Reading,* 402 Pa. 592, 167 A. 2d 469 (1961); *McGuire v. Pittsburgh School District,* 359 Pa. 602, 60 A. 2d 44 (1948). *See also* Statutory Construction Act of 1972, Act of November 25, 1972, P. L. 707, as amended, 1 Pa. S. §1928(a)(5). Since liability of all real estate to taxation is the rule with exemption being the exception (*see Dougherty v. City of Philadelphia,* 112 Pa. Superior Ct. 570, 172 A.

177 (1934)), the burden is placed upon the taxpayer to bring himself within the exemption statute. *See Pittsburgh Institute of Aeronautics Tax Exemption Case,* 435 Pa. 618, 258 A. 2d 850 (1969); *University of Pittsburgh Tax Exemption Case,* 407 Pa. 416, 180 A. 2d 760 (1962).

There are a number of cases in which the term "purely public charity" has been discussed. For example, *Hill School Tax Exemption Case,* 370 Pa. 21, 26, 87 A. 2d 259, 262 (1952) states: "The word 'purely' as used in the Constitution in the phrase 'purely public charity' means that the institution must be entirely free from private profit motive." In *Presbyterian Homes Tax Exemption Case,* 428 Pa. 145, 236 A. 2d 776 (1968) where the court upheld an exemption for a labor union sponsored home for the aged, where most of the residents paid for part of their care and expenses incurred, the holding of the court was that a purely public charity did not cease to be such where it received some payment for its services. In *Robert Morris College v. Board of Property Assessment, Appeals and Review,* 5 Pa. Commonwealth Ct. 648, 663, 291 A. 2d 567, 576 (1972) we stated: " 'Purely' to us means it must be entirely or wholly a public charity in every sense of the word, which would include all of the elements found in the word 'eleemosynary.' " We there cited *Ogontz School Tax Exemption Case,* 361 Pa. 284, 294, 65 A. 2d 150, 154 (1949), where the court stated: " 'In all our decisions on this subject there can be discerned as a prerequisite to the taxation exemption of an institution claimed to be benevolent or charitable that it, or a portion of its property, in respect to which exemption is claimed, must possess an eleemosynary characteristic not possessed by institutions or property devoted to private gain or profit. What is 'given' must be more nearly gratuitous than for a price which impresses one as being proportionate to the services rendered.' "

We also must point out that in two prior cases we have held that the prime consideration is the use of the property rather than any characterization of the owner or lessee or the use of the proceeds from the property which determines whether or not tax exemption may be granted. *See The Lutheran Home at Topton, Pennsylvania Tax Appeal,* 6 Pa. Commonwealth Ct. 199, 293 A. 2d 888 (1972); and *Reading Municipal Airport Authority v. Schuylkill Valley School District,* 4 Pa. Commonwealth Ct. 300, 286 A. 2d 5 (1972). Furthermore, although not controlling, it is interesting to note that in the findings of the court below it was noted that some of the beneficiary agencies of the United Fund own real estate which the Board has exempted from real estate taxation.

We have been unable to find any Pennsylvania cases dealing with the exempt status of an organization such as the United Fund. We did find a case in Virginia, viz., *City of Richmond v. United Givers Fund of Richmond, Henrico and Chesterfield, Inc.,* 205 Va. 432, 137 S.E. 2d 876 (1964) wherein the court stated: "Clearly, we think that in the administration of its benevolences through these agencies, UGF is a charitable association within the meaning of that term as used in the constitutional and statutory provisions." 205 Va. at 436, 137 S.E. 2d at page 879.

We have carefully reviewed the entire record in this case and the applicable constitutional and statutory law. Our review permits us to conclude that the court below did not commit an error of law in sustaining the United Fund's appeal. The court's conclusion that United Fund is a "purely public charity" and that its use of the premises in question carries out its public charitable purpose is correct. The lower court's conclusion that the two charitable lessees of the United Fund premises are also purely public charities whose use of the premises in question provides no profit to

United Fund while carrying out their respective charitable purposes is likewise correct. The United Fund was founded as a public charity and is maintained as such. *See Robert Morris College, supra.* While the City's position in this case may be understandable, the law simply does not support it. We, therefore, affirm the order of the court below.