**APPEAL OF the NORTHWESTERN CORPORATION From the Dauphin County Board of Assessment Appeals.**

**Appeal of The NORTHWESTERN CORPORATION, Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 7, 1995.

Decided Sept. 15, 1995.

William A. Fetterhoff, for appellant.

Carl G. Wass, for appellee.

Before COLINS, President Judge, and DOYLE, McGINLEY, PELLEGRINI, FRIEDMAN, KELLEY and NEWMAN, JJ.

DOYLE, Judge.

The Northwestern Corporation (Northwestern) appeals an order of the Court of Common Pleas of Dauphin County denying Northwestern's request for a real estate tax exemption.

The trial court made the following findings of fact. Northwestern, a nonprofit corporate entity, is the parent company of twenty subsidiary corporations that deliver or support various mental health, mental retardation, drug and alcohol abuse and other health related services. One of these subsidiaries, the Edgewater Psychiatric Center, was formed as a nonprofit Pennsylvania corporation. In January of 1988, Edgewater opened a twenty-six bed free-standing psychiatric hospital at 1829 North Front Street in the City of Harrisburg.

On December 14, 1990, Northwestern purchased a second property at 2421 North Front Street. This facility, commonly known as Riverview, offers a partial hospitalization program for the mentally ill. Riverview was not incorporated as a separate entity from Northwestern, but is managed by Edgewater.

■ Following the opening of Riverview in January 1992, Northwestern applied to the Board for an exemption from real estate taxation for the Riverview property as a charitable institution.[1] The Board denied Northwestern's request, and it appealed to the trial court. The trial court held that Northwestern had failed to sustain its burden of proving that Riverview was an institution of purely public charity, and this appeal followed.

Northwestern argues that the trial court erred in holding that it is not eligible for a property tax exemption and asserts that it does qualify for an exemption as a purely public charity.

Under Article VIII, Section 2(a)(v) of the Pennsylvania Constitution, the General Assembly is empowered to confer tax exempt status to "institutions of purely public charity." Pa. Const. art. VIII, § 2(a)(v). In *Hos-*

*pital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (1985) (*HUP*), our Supreme Court concluded that an entity qualifies as a purely public charity if it:

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) Operates entirely free from private profit motive.

*Id.* at 22, 487 A.2d at 1317.

■ We have held that the entity claiming to be a purely public charity has the burden of proving that its operation satisfies all five of these criteria for tax exemption. *Westmoreland County Board of Assessment Appeal,* 125 Pa.Cmwlth. 315, 557 A.2d 828 (1989). Once an entity seeking tax exemption establishes that it is a purely public charity within the meaning of Article VIII of the Pennsylvania Constitution, it must also establish that it meets the statutory requirements of Section 204(a)(3) of the Law, 72 P.S. § 5020–204(a)(3). *Associated YM–YWHA of Greater New York/Camp Poyntelle v. County of Wayne,* 149 Pa.Cmwlth. 349, 613 A.2d 125 (1992). Section 204(a)(3) of the Law provides that:

(a) The following property shall be exempt from all county, city, borough, town, township, road, poor or school tax, to wit:

(3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence, or charity, ... founded, endowed, and maintained by public or private charity: Provided, That the entire revenue derived by the same be applied to the support and to increase the efficiency and facilities thereof, the repair and the necessary increase of grounds and build-

---

1. Edgewater is not eligible for property tax exemption because it only leases the property at 1829 North Front Street, and does not own it.

Section 204(c) of the General County Assessment Law (Law), Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. § 5020–204(c).

ings thereof, and for no other purpose. . . .

72 P.S. § 5020–204(a)(3).

■ Northwestern argues that Edgewater and Riverview should be viewed as a single entity which conducts unified functions at separate, non-contiguous properties; viewed in this manner they clearly function as an institution of purely public charity. We disagree. In order to qualify for a real estate tax exemption, the charitable activity of the entity must occur on the specific property for which the exemption is sought, and the entity must be the owner and occupier of the property.

■ The courts of this Commonwealth have stated repeatedly that provisions exempting property from taxation must be strictly construed. *HUP; Appeal of Archdiocese of Philadelphia,* 151 Pa.Cmwlth. 480, 617 A.2d 821 (1992). Northwestern's approach, by advocating an analysis of the activities of its independent subsidiary, Edgewater Psychiatric Center, which is wholly owned by Northwestern, in conjunction with the activities at Riverview, and considering them as a single entity for the purpose of exempting the Riverview property from tax, fails to abide by this directive and expands the concept of the property tax exemption in an unprecedented manner. Although there may be other types of taxes where it might be appropriate to view Edgewater as a single entity which includes Riverview and which operates at two different sites, such an approach is not logical for the purpose of levying real property taxes. The tax at issue here is not on the activity of the entity wherever its many branches and functions are located, but is a tax based on the value of the parcel of real estate upon which the activity of that entity is located. Thus, it is the charitable activity which occurs on that parcel, and only that parcel, which is relevant.

■ Northwestern is the title owner of the Riverview property. (*See* 1992 Tax Notices, Exhibit 40; R.R. at 342–44.) Edgewater, a corporate entity separate and distinct from Northwestern, cannot be viewed as the "institution" which would qualify Riverview for property tax exemption. As Northwestern explains in its brief, Northwestern is the parent corporation of the Edgewater Psychiatric Center. Edgewater merely operates the Riverview facility. (Northwestern's Brief at 6.) Edgewater has no ownership interest in the Riverview facility. Therefore, the particulars of Edgewater's activities at 1829 North Front Street are irrelevant for the purpose of analyzing the charitable nature of the use of the property on which Riverview is located at 2421 North Front Street, which is the factor which would exempt it from property tax. There is no authority, for the purposes of real property taxation, for reviewing any information concerning the activity of Edgewater, which is on a totally separate parcel of real estate, and is a totally separate corporate entity from Riverview.[2]

■ We now turn to the question of whether Riverview by itself qualifies for an exemption from real estate taxation. As we stated previously, the Pennsylvania Constitution permits the General Assembly to exempt from taxation "institutions of purely public charity." Article VIII, Section 2(a)(v) of the Pennsylvania Constitution. If Riverview is the "institution" for the purposes of Article VIII, the trial court's holding that it is not "a purely public charity" is well supported by the evidence. The trial court concluded that Riverview fails to "render gratuitously a substantial portion of its services" as required by the Supreme Court in *HUP*. The trial court opined that (a) the payments that Riverview receives from payers such as Medicare and Medical Assistance are equal to the cost of rendering those services or are higher than those costs, (b) the use of collection agencies to recover unpaid bills belied a donative intent, and (c) 2,447 hours of uncompensated care was not a substantial portion of its services. Northwestern does not dispute the correctness of this analysis; Northwestern asserts that it is incomplete and advocates the inclusion of the activities of

---

**2.** Moreover, Edgewater as an institution has no standing to appeal the tax assessment on a parcel of land which it does not own. Section 204(c) of the Law, 72 P.S. § 5020–204(c).

Edgewater in the analysis in order to qualify the Riverview property for exemption.

However, even if **"Riverview"** was an institution of purely public charity, it still would not qualify for tax exemption, because Section 204(c) of the Law provides:

[A]ll property ... actually and regularly used and occupied for the purposes specified in this section shall be subject to taxation, unless the ... corporation, so using and occupying the same *shall be seized of the legal or equitable title in the realty* ....

Section 204(c) of the Law, 72 P.S. § 5020–204(c) (emphasis added). "Riverview" has no separate existence as a corporate entity and, therefore, it does not own the property; Northwestern does. "Riverview" is, therefore, not eligible for exemption under Section 204(c) of the Law.

█ Finally, Northwestern, as the corporate owner of the property, is also not eligible for exemption under Section 204(c) of the Law, because there was *never* any finding below that the property was "actually and regularly used and occupied" for Northwestern's charitable purposes, only Edgewater's charitable purpose.[3]

According to the articles of incorporation filed by Northwestern, its purpose is to:

[D]irectly or indirectly, through one or more subsidiaries or affiliates, to raise funds for and otherwise support, maintain, acquire, establish, conduct and operate facilities and programs for the housing, caring for, treating, attempting to cure and curing persons regardless of race, creed, color or ability to pay, suffering from and affected by, mental health/mental retardation problems or illnesses, ...

(Articles of Incorporation for the Northwestern Corp., Exhibit 10; R.R. at 152a.) Clearly, the Riverview building is not regularly used and occupied for *Northwestern's* broadly described mission which is to primarily raise funds and otherwise enable the establishment of organizations to treat the mentally ill. Rather, it is regularly used and occupied for the more narrow purpose of Edgewater, that is, the provision of hospitalization care for the mentally ill. *See Greater Erie Economic Development Corporation Appeal,* 61 Pa.Cmwlth. 144, 433 A.2d 568 (1981) (even though the owner/lessor charitable organization used premises for meetings of its board of directors, it failed to provide any evidence that it "occupied" the property, as required by Section 204(c) of the Law, or that the property was "necessary for the occupancy and enjoyment" of the owner/lessor under Section 204(a)(3) of the Law, 72 P.S. § 5020–204(a)(3)).[4] In fact, Edgewater is responsible for the operation of Riverview, not Northwestern. However, as stated before, Edgewater does not own the property and it has no standing to seek exemption. Thus, Northwestern failed in its heavy burden of proving that it was entitled to a real property tax exemption for the Riverview parcel. *Hamot.*

Affirmed.

## ORDER

NOW, September 15, 1995, the order of the Court of Common Pleas of Dauphin County in the above-captioned matter is hereby affirmed.

---

**3.** *Cf. School District of the City of Erie v. Hamot Medical Center of the City of Erie,* 144 Pa. Cmwlth. 668, 602 A.2d 407 (1992), where the trial court made extensive findings of fact concerning the corporate structure of Hamot Medical Center and its relationship to sister corporations belonging to the parent corporation, Hamot Health Systems, Inc., in order to determine the medical center's qualification for tax exemption.

**4.** The building that Northwestern occupies is located in Erdenheim, Pennsylvania.