**Appeal of: the CITY OF PITTSBURGH from the Action of the Board of Property Assessment Appeals and Review of Allegheny County in regard to Property owned by the Pittsburgh Trust for Cultural Resources, Situate in the 2nd Ward of the City of Pittsburgh**

**Block and Lot No. 2–A–25.**

**County of Allegheny School District of Pittsburgh The Pittsburgh Trust for Cultural Resources.**

**Appeal of: City of Pittsburgh.**

**Appeal of: the City of Pittsburgh from the Action of the Board of Property Assessment Appeals and Review of Allegheny County in regard to property owned by the Pittsburgh Trust for Cultural Resources, Situate in the 2nd Ward of the City of Pittsburgh**

**Block and Lot No. 9–N–196.**

**County of Allegheny School District of Pittsburgh The Pittsburgh Trust for Cultural Resources.**

**Appeal of: City of Pittsburgh.**

Commonwealth Court of Pennsylvania.

Argued May 6, 2009.
Decided June 17, 2009.

---

Ronald H. Pferdehirt, Pittsburgh, for appellant.

William P. Bresnahan, Pittsburgh, for appellee, The Pittsburgh Trust for Cultural Resources.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge BUTLER.

The City of Pittsburgh (City) appeals from the September 4, 2008 order of the Court of Common Pleas of Allegheny County (trial court) exempting two properties owned by The Pittsburgh Trust for Cultural Resources (Trust), located at 820 Liberty Avenue and 110 Ninth Street, from local real estate taxes. The issue before us is whether these properties qualify for tax exemptions when they are neither currently used nor occupied by the Trust. For the reasons stated below, we reverse the decision of the trial court.

The Trust is a Pennsylvania non-profit corporation founded in 1984 to promote economic and cultural growth in what was formerly a blighted 14–block area of downtown Pittsburgh, now known as the Cultural District. It was founded under the joint sponsorship of the Allegheny County Conference on Community Development, the Howard Heinz Endowment, and the Pittsburgh Foundation, with the support of the City and the County of Allegheny. The Trust is exempt from federal taxation under Section 501(c)(3) of the Internal Revenue Code, 26 U.S.C. § 501(c)(3), and is exempt from Pennsylvania sales tax.

According to its bylaws, the purpose of the Trust "is to receive, administer and

distribute property, real or personal, to or for the use of the Commonwealth of Pennsylvania or any political subdivision thereof for exclusively public purposes." To that end, in October of 2000, the Trust purchased the 110 Ninth Street property, which consists of a vacant five-story building. It is not habitable for commercial or residential purposes without extensive renovations. The property was purchased in order to prevent its use in a manner that is inconsistent with a proposed mixed-use development along Fort Duquesne Boulevard up to Penn Avenue. The Trust intends to have the building torn down in anticipation of development by a private developer within a year or two. If the new building does not occupy the entire site, the Trust plans to retain a parcel of it for a public park. Architects were retained in furtherance of the proposed project; however, according to counsel at argument, the deal with the original developer has fallen through, so the project is now on hold.

In November of 2000, the Trust purchased the five-story 820 Liberty Avenue property whose only tenants at the time were a Chinese restaurant, and a 24–hour check cashing facility. The remaining four floors were empty. The Trust did not renew the tenants' leases when they expired. The ground floor of the property is currently used as an art gallery approximately 24 weeks per year by Carnegie Mellon students in the master of fine arts program, and is one of the locations of "gallery crawls" held four times per year. According to the Trust's General Counsel and Senior Vice President of Operations, David R. DeSimone, there are no specific plans to expand the 820 Liberty Avenue property use in furtherance of the arts.

Historically, it has been the Trust's policy to pay full real estate taxes on portions of its properties that produce taxable commercial business income, such as parking garages. It seeks exemptions for only those portions of its properties used for purely public charitable purposes. Thus, until 2006, the Trust paid real estate taxes on the subject properties. It sought an exemption for the 110 Ninth Street property beginning in 2006, only when a project known as the River Park Plan was finally adopted for the development of the area. Since the property's proposed improvements will include public uses as well as for-profit residential development, the Trust will eventually seek only a partial exemption for those portions designated for purely public use, i.e., the park.

By decision mailed January 3, 2006, Allegheny County's Office of Property Assessments determined that the 820 Liberty Avenue property was 43% exempt and 57% taxable. By decision mailed December 22, 2006, the Office of Property Assessments determined that the 110 Ninth Street property did not qualify for an exemption. The Trust appealed these determinations and requested a formal hearing by the Office of Property Assessments. Following the hearing, the Office of Property Assessments issued a determination on November 1, 2007 (later clarified by a letter dated November 8, 2007), that the 820 Liberty Avenue property was 91.5% exempt for 2006 and 100% exempt for 2007 and subsequent years, and that the 110 Ninth Street property was 100% exempt for 2006 and subsequent years. The City appealed these decisions to the trial court, which, after a status conference and the deposition of Mr. DeSimone, on September 4, 2008, ordered that the properties were entitled to the exemptions set by the Office of Property Assessments. The City appealed the trial court's order to this Court.[1]

1. The standard and scope of review in these matters has been stated as follows:

■ The City, joined by Allegheny County, argues that the Trust's purchase of real estate, either to hold it indefinitely in a vacant condition, or to demolish it and convey it to a for-profit business for future commercial development, does not constitute such use and occupancy as would entitle them to tax exemption.

The Pennsylvania Constitution authorizes the General Assembly to exempt from taxation "[i]nstitutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution." Pa. Const. art. 8, § 2(a)(v). Pursuant to its constitutional authority, by Section 204(a)(3), (9), (b)-(c) of The General County Assessment Law (Assessment Law),[2] the General Assembly declared that:

(a) *The following property shall be exempt* from all county, city, borough, town, township, road, poor and school tax, to wit:

. . . .

(3) All . . . institutions of . . . charity . . . with the *grounds thereto annexed and necessary for the occupancy and enjoyment of the same,* founded, endowed, and maintained by public or private charity:

. . . .

(9) *All real property* owned by . . . institutions of purely public charity, used and occupied partly by such owner . . . and *necessary for the occupancy and*

*enjoyment of such institution* [ ] so using it;

. . . .

(b) Except as otherwise provided in clauses (11) and (13) of this section [relating to libraries and fire stations], *all property real or personal, other than that which is actually and regularly used and occupied for the purposes specified in this section,* and all such property from which any income or revenue is derived, other than from recipients of the bounty of the institution or charity, *shall be subject to taxation,* except where exempted by law for State purposes, and nothing herein contained shall exempt same therefrom.

(c) Except as otherwise provided in clause (10) of this section [relating to playgrounds], *all property, real and personal, actually and regularly used and occupied for the purposes specified in this section shall be subject to taxation,* unless the person or persons, associations or corporation, so using and occupying the same, shall be seized of the legal or equitable title in the realty and possessor of the personal property absolutely.

(Emphasis added).

This Court has held that "[a]n entity seeking a statutory exemption for taxation must first establish that it is a 'purely public charity' under Article VIII, Section 2 of the Pennsylvania Constitution before the question of whether that entity meets the qualifications of a statutory exemption can be reached." *Nat'l Church Residences*

---

Whether a parcel of property qualifies for tax exemption is a question of law. As such, this Court's standard of review is *de novo* and our scope of review is plenary. In a tax assessment appeal, our review is limited to determin[ing] whether the trial court abused its discretion or committed an error of law and whether the decision is supported by the requisite evidence.

*Veterans of Foreign Wars Post 1989 v. Indiana County Bd. of Assessment Appeals,* 954 A.2d 100, 103 n. 2 (Pa.Cmwlth.2008) (citations and quotations omitted).

2. Act of May 22, 1933, P.L. 853, *as amended,* 72 P.S. § 5020–204(a)(3), (9), (b)-(c).

*of Mercer County v. Mercer County Bd. of Assessment Appeals,* 925 A.2d 220, 225 (Pa.Cmwlth.2007). Section 5 of the Institutions of Purely Public Charity Act,[3] sets forth the criteria for institutions of purely public charity.

■ Where, as here, the parties do not dispute that a particular institution is a purely public charity whose properties may be exempt from real property taxes, this Court's focus becomes the use that the Trust makes of its property and the relationship of that use to its purposes. *See Alliance Home of Carlisle, PA v. Bd. of Assessment Appeals,* 591 Pa. 436, 465, 919 A.2d 206, 224 (2007); *Veterans of Foreign Wars Post 1989.* Under Section 204 of the Assessment Law, we must determine whether the subject properties are "necessary for the occupancy and enjoyment" of the Trust. *See Appeal of Nw. Corp. from Dauphin County Bd. of Assessment Appeals,* 665 A.2d 856 (Pa.Cmwlth.1995) and *Presbyterian–Univ. of Pennsylvania Med. Ctr. v. Bd. of Revision of Taxes,* 24 Pa. Cmwlth. 461, 357 A.2d 696 (1976). "Absolute necessity, however, need not be shown. Evidence establishing a reasonable necessity is sufficient to carry claimant's burden." *Presbyterian–Univ.* at 698.

This Court has held that the question of whether property is " 'necessary for the occupancy and enjoyment' of a charitable institution is one primarily for its governing board. The courts will not, however, give unlimited deference to the charitable body's characterization." *Id.* (citations omitted). Thus, this Court must look at "the use of the property rather than any characterization of the owner or lessee or the use of the proceeds from the property" to discern whether a tax exemption may be granted. *Bd. of Revision of Taxes of Phila. v. United Fund of Phila. Area,* 11 Pa.Cmwlth. 201, 314 A.2d 530, 533 (1973).

According to the Trust's bylaws, its specific purposes are:

(a) to acquire, build, restore, replace, preserve, maintain and manage land and buildings and any other interest in real and personal property of any kind or description whatsoever in connection with the planning, creation, development, operation, and administration of one or more cultural districts within the City of Pittsburgh or any facilities for use in the performing or visual arts in the City of Pittsburgh;

(b) to plan, create, develop, operate and administer, and to assist and cooperate with others in the planning, creation, development, operation and administration of, any such cultural district facilities for use in the performing or visual

---

**3.** Act of November 26, 1997, P.L. 508, 10 P.S. § 375. Section 5 of the Act provides, in pertinent part:

    **(a) General rule.**—An institution of purely public charity is an institution which meets the criteria set forth in subsections (b), (c), (d), (e) and (f). An institution which meets the criteria specified in this section shall be considered to be founded, endowed and maintained by public or private charity.

    **(b) Charitable purpose.**—The institution must advance a charitable purpose.

. . . .

    **(c) Private profit motive.**—The institution must operate entirely free from private profit motive.

. . . .

    **(d) Community service.**—

(1) The institution must donate or render gratuitously a substantial portion of its services.

. . . .

    **(e) Charity to persons.**—

(1) The institution must benefit a substantial and indefinite class of persons who are legitimate subjects of charity.

. . . .

    **(f) Government service.**—The institution must relieve the government of some of its burden.

. . . .

10 P.S. § 375(a)-(f).

arts in the City of Pittsburgh, including any real or personal property, services and accommodations ancillary thereto; (c) to participate in the economic rejuvenation and development of the area of the City of Pittsburgh in which any such cultural district or facilities for use in the performing or visual arts are located and the environs of such area;

. . . .

(g) to do any act or thing incidental to or in connection with the foregoing purposes or in advancement thereof. . . .

Reproduced Record for 1931 CD 2008 at 54a–55a; Reproduced Record for 1932 CD 2008 at 45a–46a. The Trust acknowledges that the buildings on both properties are vacant, and it maintains them only as necessary. As for the 110 Ninth Street property, it is currently uninhabitable in any fashion; however, there was evidence presented that the Trust has had the intention of having the building demolished and the land developed privately, with a small portion to be owned and maintained by the Trust as a public park, which the Trust claims is in accordance with its bylaws, and in continuation of its purpose.

The Trust likewise asserts that, while it does not have plans to use or occupy the 820 Liberty Avenue property, its acquisition thereof served its purpose of eliminating the then-existing "noxious" uses, thereby assisting the growth of the performing and visual arts, by promoting economic rejuvenation and private development in the area, which are in accordance with its bylaws and in continuation of its purpose. The Trust argues that it also furthers its purposes by permitting Carnegie Mellon students, at no cost, to use the ground floor occasionally, and because it is a stop on the Cultural District's quarterly "gallery crawls." R.R. No.1932 at 29a–31a, 34a–36a. Mr. DeSimone stated, however, that in the Trust's opinion, the eventual use of the building need not necessarily be connected with the arts or non-profit charitable purposes.

In *Lutheran Home at Topton v. Bd. for Assessment & Revision of Taxes, Berks County*, 6 Pa.Cmwlth. 199, 293 A.2d 888 (1972), this Court stated that "[t]he property sought to be exempted must be devoted to the charitable use," and that those that are unused, are used for other than the charitable purposes, or are devoted to essentially commercial uses, are not exempt. *Id.* at 892. In *Odd Fellows' Home of Pennsylvania v. Bd. of Tax Assessment Appeals of Dauphin County*, 77 Pa. Cmwlth. 453, 466 A.2d 256 (1983), this Court upheld the denial of a request by a purely public charity to exempt 66.4 acres of unimproved land held for future expansion and as a buffer for the neighborhood, stating that the facts did not support the need for a buffer, and research revealed "no case in which a charity has been permitted to hold vacant land on a tax exempt basis for purposes of future construction or expansion of facilities." *Id.* at 258. Recently, this Court held that Section 204(b) and (c) of the Assessment Law "require a purely public charity to occupy the real estate it owns in order to qualify for an exemption." *Veterans of Foreign Wars Post 1989*, 954 A.2d at 104.

That is clearly not the case with the 820 Liberty Avenue property. While it is used occasionally, the Trust admittedly does not occupy it, and it has no plans to do so. The Trust's purposes, as detailed in its bylaws (*supra*), are admirable; but they are not served by the Trust purchasing and holding buildings vacant in that district. Moreover, it would not be fulfilling the purpose of the taxing scheme as the Pennsylvania Courts have recognized:

Taxes are not penalties, but are contributions which all inhabitants are expected to make (and may be compelled to make) for the support of the manifold

activities of the government. Every inhabitant and every parcel of property receives governmental protection. Such protection costs money. When any inhabitant fails to contribute his share of the cost of this protection, some other inhabitant must contribute more than his fair share of that cost.... Any institution which by its charitable activities relieves the government of part of this burden is conferring the pecuniary benefit upon the body politic, and in receiving exemption from taxation it is merely being given a 'quid pro quo' for its services in providing something which otherwise the government would have to provide.... The measure of an institution's gratuitous aid to those requiring it is the measure by which the government is relieved of its responsibilities.

*United Fund of Phila. Area* at 532 (citing *YMCA of Germantown v. Phila.*, 323 Pa. 401, 413–14, 187 A. 204, 210 (1936), disapproved of on other grounds, *W. Allegheny Hosp. v. Bd. of Prop. Assessment, Appeals & Review*, 500 Pa. 236, 455 A.2d 1170 (1982)).

As to the 110 Ninth Street property, only a portion of it is proposed to be used by the Trust at some point in the future, with the vast majority of it to be developed and used by an unrelated business entity for profit. In cases in which public charities have been granted tax exempt status for vacant properties under construction, it appears to have been with the idea that the construction was, at the very least, in the beginning stages, and that the public charity itself would occupy and use the properties once constructed. *See Senior Citizen Health Care Council of Erie County, Pa., Inc. v. Bd. of Tax Assessment Appeals of Erie County*, 678 A.2d 430 (Pa. Cmwlth.1996) (property for which the charity hired an architect and solicited bids for renovation of its new offices was entitled to tax exempt status) and *Overmont Corp. v. Bd. of Tax Revision of City of Phila.*, 479 Pa. 249, 388 A.2d 311 (1978) (a charity constructing additional facilities is deemed to be using its property for charitable purposes during that time so as to come within the scope of the Assessment Law). Moreover, in terms of a charity leasing or otherwise allowing another entity to operate on its property, this Court has stated that "land used by unrelated business entit[ies] existing solely as a revenue stream to finance a different and [even] charitable endeavor is not entitled to an exemption." *Veterans of Foreign Wars Post 1989*, 954 A.2d at 106 (quotations omitted).

A taxpayer seeking exemption from real estate tax liability has the burden of proving that he/she qualifies for the exemption. *Metro. Pittsburgh Nonprofit Hous. Corp. v. Bd. of Prop. Assessment, Appeals & Review*, 480 Pa. 622, 391 A.2d 1059 (1978). "Moreover, statutory provisions exempting property from taxation are subject to a strict construction." *Id.* at 626, 391 A.2d at 1061. Here, the Trust has failed to meet its burden of establishing that the subject properties are "necessary for the occupancy and enjoyment" of the Trust, as required by the Assessment Law. We hold, therefore, that the trial court erred by finding that the 820 Liberty Avenue property was 91.5% exempt for 2006 and 100% exempt for 2007 and subsequent years, and that the 110 Ninth Street property was 100% exempt for 2006 and subsequent years. The properties are not exempt from the local real estate taxes at issue.

For the reasons stated above, the September 4, 2008 decision of the trial court is reversed.

### ORDER

AND NOW, this 17th day of June, 2009, the September 4, 2008 order of the Court of Common Pleas of Allegheny County is hereby reversed.

78

**DISSENTING OPINION BY President Judge LEADBETTER.**

I must respectfully dissent. Given the specific mission of the Trust, which is conceded to be that of a purely public charity, I believe, as found by the trial court, that the Trust is currently "using" the properties in question for those charitable purposes. In addition, I believe the term "occupancy" means no more than regular use by the charitable institution. Accordingly, I would affirm the thoughtful decision of the Honorable R. Stanton Wettick, Jr.

Judge LEAVITT joins this dissenting opinion.