689 A.2d 254

**Michael B. O'BRIEN and Joanne Butler, Appellants**

**v.**

**NATIONWIDE MUTUAL INS. CO., Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 14, 1996.

Filed Jan. 24, 1997.

570

John N. Salla, Philadelphia, for appellants.

Robert Keller, Philadelphia, for appellee.

Before CIRILLO, President Judge Emeritus, and DEL SOLE and OLSZEWSKI, JJ.

OLSZEWSKI, Judge.

Appellants, Michael B. O'Brien and Joanne Butler, appeal from the order entered in the Court of Common Pleas of Philadelphia County on April 10, 1996. We affirm.

On August 22, 1991, O'Brien contacted Raymond Chin t/a Sunrise Insurance to procure automobile insurance coverage through the Pennsylvania Assigned Risk Plan. O'Brien's application for immediate coverage was forwarded to the Assigned Risk Plan via electronic mail. R.R. 13a. The Plan then assigned the risk to appellee, Nationwide Mutual Insurance Company (Nationwide). Accompanying O'Brien's application was a premium deposit check in the amount of $787.00. R.R. 15a. This check, however, was subsequently dishonored for insufficient funds. Consequently, on September 26, 1991, O'Brien delivered a bank money order to Chin to cover for the dishonored check. R.R. 16a. The money order and a photocopy of the original application were both mailed to Nationwide on October 2, 1991. R.R. 48a. On the copy of the

application, O'Brien noted "My check ... bounce[d]. I'm sending a money order to replace the check." R.R. 17a.

Nationwide sent a letter dated October 2, 1991, to both O'Brien and Chin stating that "[O'Brien's] premium remittance ... has been returned ... because of non[-]sufficient funds" and that, as a result, any "coverages ... are rescinded as of the effective date on the application." R.R. 18a. Nationwide received O'Brien's money order and the photocopy of his original insurance application on October 21, 1991. In response, Nationwide sent a notice dated the same day to Chin indicating that the money order did not serve to procure insurance and that the payment would be refunded to O'Brien. R.R. 19a. Nationwide then cashed the money order and later issued O'Brien a full reimbursement check dated October 23, 1991. R.R. 132a.

On October 27, 1991, O'Brien and Butler were involved in a motor vehicle accident. The vehicle driven by O'Brien at the time of the accident was the vehicle for which he had applied for the coverage in question; Butler was a passenger in the vehicle. Both appellants alleged that they sustained injuries resulting in medical and other expenses as a result of this accident.

Appellants thereafter filed suit against Nationwide seeking a declaratory judgment as to O'Brien's status as an insured at the time of the accident. Alternatively, appellants sought damages from Nationwide based upon negligence, misrepresentation, breach of contract and promissory estoppel. The lower court held in favor of Nationwide. Appellants then filed post-trial motions the denial of which, on April 10, 1996, prompted the instant appeal.

In rendering its declaratory judgment, the trial court relied upon section 11.G of the rules and regulations promulgated pursuant to the Assigned Risk Plan which states:

G. *Dishonored Checks from the Insured*

No coverage will be effective if the premium remittance, which accompanies the application, and is forwarded to the

assigned carrier, is justifiably dishonored by the financial institution.

Applying this provision, the trial court found that since the premium check O'Brien remitted with his initial application was dishonored, the coverage he sought was "void *ab initio.*" Trial court opinion, 6/14/96 at 4. Having found that O'Brien was not entitled to insurance coverage pursuant to the initial application, the trial court then addressed the effect of O'Brien's subsequent submission of the copy of the application and the money order. In doing so, the trial court held that

> [Nationwide] would not be liable to O'Brien unless [he] had complied with all the rules as a new applicant and was again assigned to [Nationwide]. The Court finds that O'Brien's photocopy of the previous application and money order did not constitute a reinstatement of coverage under the Plan.

*Id.* at 6.

 Initially, appellants contend that the trial court erred in this declaratory judgment. When reviewing the determination of the trial court in a declaratory judgment action, our scope of review is narrow. *Nationwide Mut. Ins. Co. v. Johnson,* 450 Pa.Super. 519, 521–23, 676 A.2d 680, 682 (1996). Declaratory judgment actions follow the practice and procedure of an action in equity. *Id.* Consequently, we will review the decision of the lower court as we would a decree in equity and set aside the factual conclusions of that court only where they are not supported by adequate evidence. *Id.* The application of the law, however, is always subject to our review. *Id.*

 In challenging the lower court's declaratory judgment, appellants first cite section 11.E of the Assigned Risk Plan and argue that since O'Brien reasonably complied with the pertinent application procedures, Nationwide was required to provide him with at least 15 days within which to remedy the dishonor of his check. Appellants contend that O'Brien cured such defect within the applicable 15–day period by submitting a money order and copy of the original application. Based

thereon, appellants claim that O'Brien was insured as of the date of the accident.

An application for insurance pursuant to the Assigned Risk Plan must comply with the requirements set forth in section 11. This section requires that the application be submitted to the Plan on the prescribed form, in duplicate, accompanied by a premium deposit. Additionally, section 11.E contains the following provision relating to incomplete applications:

*E. Incomplete Applications*

Applications shall be accepted by the Plan and assignments shall be processed by the assigned company, if the above requirements are reasonably complied with, and it shall be the responsibility of the Plan and the assigned company to communicate clearly to the insured and to the producer of record in what respect an application requires correction. The assigned company shall give at least 15 days to the insured and the producer of record for remedying any defects in the application, and no part of the deposit premium shall be returned to the insured or to the producer of record except upon proper cancellation in accordance with the provisions of Section 18 of this Plan, as applicable.

Contrary to appellants' contention, we find section 11.E to be inapposite. The clear language of this section restricts its applicability to the completeness of the application *itself* and does not address those circumstances in which the deposit accompanying the application is dishonored. Accordingly, section 11.E does not provide an applicant with the opportunity to remedy a justifiably dishonored check. Instead, section 11.G governs the consequences of such a dishonor. Section 11.G does not, however, contain an option to remedy similar to that present in section 11.E. Appellants' argument that O'Brien's conduct served to cure the defect in his original application pursuant to the Assigned Risk Plan is, therefore, clearly meritless.

Appellants also challenge the trial court's declaratory judgment by claiming, on several grounds, that Nationwide is estopped from asserting that insurance coverage was not

properly obtained. Initially in this regard, appellants allege that, under section 11.E, Nationwide was required to inform O'Brien of any deficiency in his attempted reapplication but failed to do so.

We find this claim to be devoid of merit. Appellants correctly note that section 11.E requires the assigned company to communicate to the insured the manner in which an application requires correction. This particular provision has no relevance, however, to appellants' purported reapplication. In appellants' case, any coverage sought pursuant to the initial application was void *ab initio,* as discussed above. O'Brien was informed of this by Nationwide in its letter dated October 2, 1991, and further advised to make alternative insurance arrangements. R.R. 18a. Appellants have failed to demonstrate how O'Brien's subsequent remittance of a money order and copy of his original application served to either reinstate his original application or constituted a new one in compliance with Assigned Risk Plan procedures. Accordingly, appellants have failed to establish why it was incumbent upon appellee to provide notification to O'Brien that his attempted reapplication was improper. In the absence of such a duty upon appellee, we cannot find merit to appellants' estoppel argument.[1]

Next, appellants contend that O'Brien was entitled to 15 days advance notice of the cancellation of his insurance policy pursuant to section 18.B and that Nationwide's failure to so comply precludes the denial of insurance benefits. In support of this particular claim, appellants cite numerous communications and documents generated by Nationwide wherein Nationwide consistently refers to "cancellation" of the policy as opposed to "recission" of such.

---

1. In an additional attempt to establish a claim based upon principles of estoppel, appellants argue that O'Brien forwarded the money order based upon the representations of Nationwide. Appellants claim that, as a result, O'Brien is entitled to insurance coverage. Appellants fail, however, to identify the source of Nationwide's alleged representations and a review of the record does not disclose any. Appellants' claim is, therefore, waived. *Bunt v. Pension Mortgage Assoc., Inc.,* 446 Pa.Super. 359, 367–69, 666 A.2d 1091, 1095 (1995).

While the cited section of the Assigned Risk Plan does indeed allow an insurance company to cancel a policy upon 15 days notice for certain enumerated causes, this section has no applicability to the case *sub judice*. Again, appellants fail to recognize that O'Brien's policy was void *ab initio* and not "cancelled." Appellants seek to gain legal rights from a mere mischaracterization by Nationwide in its correspondence.[2] The failure of Nationwide to consistently characterize the status of the insurance policy does not, however, legally bind them in the absence of any allegation of reliance by O'Brien on such mischaracterizations.

Appellants next challenge the trial court's denial of declaratory relief on the basis that coverage was mandated under principles of contract law. Appellants contend that the sending of the money order and copy of the original application was an offer to purchase insurance coverage and, further, that when Nationwide cashed the money order it accepted such offer.[3]

"An offer is a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Cobaugh v. Klick-Lewis, Inc.*, 385 Pa.Super. 587, 589-91, 561 A.2d 1248, 1249 (1989) (citing Restatement (Second) of Contracts § 24; 8 P.L.E. Contracts § 23). *See also Stumpp v. Stroudsburg Mun. Authority*, 540 Pa. 391, 658 A.2d 333 (1995). O'Brien's submission of a money order and the copy of the original application was clearly an offer to

**2.** We note, however, that in its letter to O'Brien dated October 2, 1991, Nationwide properly informed him that any coverages applied for were "*rescinded* as of the effective date on the application." R.R 18a (emphasis added).

**3.** Appellants also suggest that, "[i]f the copy of the application and the money order did not create a new contract, then there was reaffirmation of the contract made earlier in August 1991." Appellants' brief at 16. In advancing this claim, appellants cite various cases as well as the Pennsylvania Law Encyclopedia. A review of these authorities reveals, however, that they concern situations where a previously existing contractual relationship was reinstated due to an insurance company's acceptance of overdue premium payments. This is clearly not the issue instantly and accordingly, we do not find the referenced authorities controlling.

purchase insurance from Nationwide. We find, however, that since Nationwide did not accept this offer, no contract for insurance came into existence.

"It is a basic principle of the law of contracts that an acceptance must be unconditional and absolute." *Thomas A. Armbruster, Inc. v. Barron,* 341 Pa.Super. 409, 418–19, 491 A.2d 882, 887 (1985). " '[A]n offer may be accepted by conduct and what the parties d[o] pursuant to th[e] offer' is germane to show whether the offer is accepted." *Accu–Weather, Inc. v. Thomas Broadcasting Co.,* 425 Pa.Super. 335, 339–41, 625 A.2d 75, 78 (1993) (quoting *Gum, Inc. v. Felton,* 341 Pa. 96, 101–03, 17 A.2d 386, 389 (1941)). *See also Schreiber v. Olan Mills,* 426 Pa.Super. 537, 541–42, 627 A.2d 806, 808 (1993) ("[W]hen seeking to enforce an agreement, one may look to the 'conduct' of the parties to ascertain the acceptance of the agreement."). While Nationwide did indeed deposit the money order, such was done in the normal course of their business operations and not as acceptance of a premium payment for the purchase of insurance. This is evidenced by the contemporaneous notice sent by Nationwide to Chin wherein Nationwide stated that "[the money order] payment of $787.00 is being refunded to Michael O'Brien. The policy will remain cancelled effective 8/22/91. Michael must re-apply for insurance coverage." R.R. 19a. Further indicative of such is Nationwide's conduct in promptly refunding O'Brien's funds. *Compare Buff v. Fetterolf,* 207 Pa.Super. 92, 215 A.2d 327 (1966) (the cashing of a check was an acceptance of an offer to renew a cancelled insurance policy); *Penn–Allen Broadcasting Co. v. Traylor,* 389 Pa. 490, 493–95, 133 A.2d 528, 531 (1957) ("[T]he acceptance and depositing of the defendant's check, representing down payment on the entire contract, bound the plaintiff irrevocably.").[4]

**4.** In deciding this issue, the trial court resorted to the Assigned Risk Plan and held that pursuant to section 20, relating to re-eligibility, O'Brien's submission of the copy of the application and money order constituted a reapplication. The trial court concluded that since O'Brien had failed to properly comply with the Assigned Risk Plan application procedures in this second attempt, he did not thereby obtain insurance coverage.

578

Next, appellants seek damages from Nationwide based upon allegations of negligence, misrepresentation, breach of contract and promissory estoppel. In advancing such claims, appellants rely upon arguments tantamount to those supporting their request for declaratory relief. Since we have already found these to be without merit, however, appellants are entitled to no relief on the latter claims.

Order affirmed.

Contrary to the holding of the trial court, we find that section 20 does not govern coverage in circumstances where a payment is resubmitted following a justifiable dishonor of a premium deposit. The reference in section 20 to compliance with the application procedures as a new application pertains solely to those cases where a policy which was initially granted is later terminated pursuant to Section 18.B.5 for failure to pay premiums due under the policy. This was clearly not the case here.