The BETSY KING LPGA
CLASSIC, INC.

v.

TOWNSHIP OF RICHMOND
and Fleetwood Area
School District.

Township of Richmond, Appellant.

The Betsy King Classic Charities, Inc.

v.

Township of Richmond and Fleetwood
Area School District.

Township of Richmond, Appellant.

Commonwealth Court of Pennsylvania.

Argued April 12, 1999.
Decided Sept. 7, 1999.
Amended as Clarified Nov. 12. 1999.
Reargument Denied Nov. 12, 1999.

Charlene R. Horst, Kutztown, for appellant.

Clinton J. Najarian, Reading, for appellees.

Before DOYLE, J., PELLEGRINI, J., and NARICK, Senior Judge.

DOYLE, Judge.

Before this Court are the consolidated appeals of the Township of Richmond (Township) from an order of the Court of Common Pleas of Berks County granting summary judgment motions filed by the

Betsy King LPGA Classic, Inc. (King LPGA) and Betsy King Charities, Inc. (King Charities) (collectively, Appellees).

In 1966, the Township enacted an amusement tax ordinance and the Fleetwood Area School District (School District)[1] (collectively, Taxing Authorities) likewise adopted a resolution imposing an amusement tax, pursuant to the Local Tax Enabling Act,[2] which levied a 10% amusement tax upon the admission to sporting events held within their areas of jurisdiction. King LPGA was formed to promote golf tournaments, purportedly for the benefit of various charities. King LPGA held its first golf tournament in the Township during the week of October 7, 1996. King Charities was also purportedly formed for the exclusive purpose of conducting charitable activities and promoted the "Betsy King Classic Golf Tournament," held within the Township during the week of September 29, 1997.[3]

The Taxing Authorities unsuccessfully attempted to collect the 10% amusement tax on the admission fees paid to Appellees for the 1996 and 1997 golf tournaments, estimated to be approximately $83,200.00. Appellees refused to pay the tax based on the belief that they were exempt from the tax because of their charitable nature. Consequently, Appellees brought declaratory judgment actions in the Court of Common Pleas seeking an order declaring the Taxing Authorities' amusement tax unenforceable against them and, further, seeking injunctive relief from taxation on future golf tournaments. The Taxing Authorities filed a timely answer along with new matter seeking an order awarding the total amusement tax due from the 1996 and 1997 golf tournaments, along with interest and penalties.

Common Pleas conducted hearings on this matter on January 5, 1998 and July 16, 1998, and issued its order on August 11, 1998, granting Appellees' motions for summary judgement as to the 1996 and 1997 golf tournaments but denying their motion for injunctive relief for the 1998 and future tournaments inasmuch as "the 'Institutions of Purely Public Charity Act,' Act No. 1997–55, H.B. No. 55, which Governor Thomas J. Ridge signed into law on November 26, 1997," now governs that issue. (Opinion of the trial court at 20.) Common Pleas also denied the Taxing Authorities' request for interest and penalties on the past tax of the admission fees. It is this order that the Township appeals.

On appeal, the Township contends that Common Pleas committed several errors of law, abused its discretion and made factual findings which were not supported by substantial evidence. We agree.

When reviewing the determination of the trial court in a declaratory judgment action, our scope of review is narrow. *O'Brien v. Nationwide Mutual Insurance Company*, 455 Pa.Super. 568, 689 A.2d 254 (1997). Declaratory judgment actions follow the practice and procedure of an action in equity. *Id.* Consequently, we will review the decision of the lower court as we would a decree in equity and set aside the factual conclusions of that court only where they are not supported by adequate evidence. *Id.* The application of the law, however, is always subject to our review. *Id.*

At the outset, we recognize this Commonwealth's long tradition of exempting charitable organizations from taxation, as evidenced by Article VIII, Section 2 of our Constitution, which provides:

The General Assembly may by law exempt from taxation:

. . .

(v) Institutions of purely public charity. . . .

---

1. The Fleetwood Area School District has not appealed from the lower court decision.

2. Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §§ 6901–6924.

3. On August 19, 1997, King LPGA assigned its rights and interests to the various agreements associated with the golf tournament to King Charities.

The principles of law in this Commonwealth on what constitutes an institution of "purely public charity" are well settled, although the myriad of circumstances and organizations to which those principles have applied led to the adoption of the 1997 legislation to which the trial judge referred.[4] In *Hospital Utilization Project v. Commonwealth,*[5] our Supreme Court articulated a five-part test (HUP test) to determine whether an institution could qualify as a purely public charity. Such an institution would qualify if it: (1) advances a charitable purpose; (2) donates or renders gratuitously a substantial portion of its services; (3) benefits a substantial and indefinite class of persons who are legitimate subjects of charity; (4) relieves the government of some of its burden; and (5) operates entirely free from private profit motive.

■ While reviewing the motions for summary judgment below, Common Pleas determined that King LPGA and King Charities sustained the burden of proof spelled out in the HUP test. Specifically, with regard to the first prong of the HUP test, Common Pleas found that Appellees did advance a charitable purpose, and stated:

> The evidence in the Summary Judgment Court record establishes that the persons who were served were those who in turn receive services from the Berks–Schuylkill Counties Chapter of the Easter Seals Society, Good Shepherd Rehabilitation Hospital, St. Luke's Hospital, Habitat for Humanity and the LPGA Foundation, all of whom are duly qualified as Section 501(c)(3) organizations under the Internal Revenue Code of 1986, as amended, and are, therefore, exempt from federal taxation themselves.... [T]his Summary Judgment

Court has no alternative but to conclude that, by promoting the two tournaments, the [Appellees] provided services which benefited an indefinite number of persons from an educational, religious, moral, physical or social standpoint and, therefore, 'advanced a charitable purpose'.

(Opinion of the trial court at 13–14.) (Footnote omitted.)

In other words, succinctly stated, the trial court found that, because the ultimate recipients of the benefits provided by the funds raised were of a classification that we would ordinarily consider as deserving of charity, and that the charitable organizations which provided those benefits to the recipients directly were tax exempt charities under *federal* law, therefore, the organizations' **source** of those funds must likewise be an institution of purely public charity. The Township argues that Common Pleas committed reversible error when it determined that King LPGA and King Charities met the requirements of the HUP test. We readily agree.

An independent auditor's report on the combined financial statements of King Charities and King LPGA, submitted by the chairman of the Board of Directors of King Charities, Sidney D. Kline, Esquire, indicates that the total revenue generated by the two golf tournaments amounted to $1,804,090.00. That same audit also identifies the amount of direct charitable contributions made by King Charities and King LPGA as $340.00. There was an additional $120,600.00 contributed to various charities by several sponsors, *on behalf of* the 1997 golf tournament, but those contributions did not pass through the corporate hands of King LPGA or King Charities. Furthermore, the record is absolutely devoid of any evidence that the organizations

4. The test for granting or denying a charitable exemption was statutorily amended by the passage of the Act of November 26, 1997, P.L. 508, *as amended,* 10 P.S. §§ 371–385, known as the Institutions of Purely Public Charity Act. This Act, which has no effect on the underlying facts and merits of this case,

incorporates the HUP test and additionally provides that an institution must also meet several additional objective standards and requirements for each element of the HUP test.

5. 507 Pa. 1, 487 A.2d 1306 (1985).

which received these contributions were charitable organizations pursuant to **Pennsylvania** law, at the time of these contributions. We specifically question the corporate structure (if it is a corporation) of the LPGA Foundation, what it does, which segment of society it benefits and all aspects of its charitable endeavors. We certainly cannot praise the Foundation nor condemn it, because the Court has absolutely no knowledge of these things from the record in this case.

█ The law in this Commonwealth is settled beyond dispute that charitable exemptions are not transferable. In *Appeal of Northwestern Corporation*, 665 A.2d 856 (Pa.Cmwlth.1995), this Court addressed a similar attempt by an organization, Northwestern, to transfer the charitable exemption it enjoyed on one property to another property it owned on the same street. The first property, located at 1829 North Front Street in Harrisburg was used as a non-profit psychiatric hospital and was deemed to qualify for exemption under the HUP test. Northwestern then purchased a second property at 2421 North Front Street and used this facility for a partial hospitalization program for the mentally ill and applied for an exemption from the real estate tax based upon Northwestern being a charitable institution. The request was denied, and Northwestern appealed to Common Pleas, which agreed and held that Northwestern was not entitled to an exemption for the property located at 2421 North Front Street because the use of *that* property did not fall within the parameters of the HUP test. This Court affirmed the decision of the Court of Common Pleas of Dauphin County.

Additionally, this very situation is addressed by the Department of Revenue in its regulations governing exemptions from taxation. Title 61, Section 32.1 of the

Pennsylvania Code, entitled definitions, states:

> Charitable organization—
>
> . . . .
>
> (iv) An organization's primary purpose cannot involve the promoting or sponsoring of a noncharitable fund raising event such as an athletic or other special event. However, a charitable organization will not lose its status merely because it hires a promoter to run an event to raise funds to support the organization's charitable purpose. Examples of noncharitable fundraising events and charitable fundraising events are as follows:
>
> **(A) An organization which exists for the primary purpose of sponsoring athletic events hires a promoter to run a professional golf tournament. The money raised by the event is used to pay the promoter for his services or to pay the event participants with any remaining funds distributed to exempt organizations. This is a *noncharitable* fundraising event.**

61 Pa.Code § 32.1 (emphasis added). Here, King LPGA and King Charities employed International Golf, Inc., which specializes in managing golf tournaments, to promote the Appellee's 1996 and 1997 golf events. The record establishes that the overwhelming majority of revenue generated, after operating expenses, went to fund the purse for the participants of the golf tournament. These facts clearly weigh against the first prong of the HUP test, along with established case law and regulations promulgated by the Department of Revenue. Therefore, Common Pleas committed an error of law when it concluded that Appellees met the burden of proving that they were, in fact, institutions of purely public charity simply because they provided funds to organizations that were tax exempt under *federal* law.[6]

Order reversed.

---

6. Based upon our holding that Common Pleas committed an error of law in applying the facts of this case to the first prong of the HUP test, we need not review the remaining four elements of the HUP test, each of which an institution must satisfy, in order to sustain the burden of proving its charitable status.

**616**

### ORDER

The order of the Court of Common Pleas of Berks County in the above-captioned matters is hereby reversed. These cases are remanded to the Common Pleas Court for entry of judgment in favor of the Township of Richmond after a calculation of the appropriate taxes due. Prior to entry of said judgment, the court shall conduct an evidentiary hearing limited to determining the amount of the tax.

Jurisdiction relinquished.

PELLEGRINI, Judge, concurring.

While I join in the majority's holding that the Betsy King LPGA Classic, Inc. and the Betsy King Classic Charities, Inc. (collectively; "Betsy King") are not charitable institutions, I write separately because the issue of whether or not its status as a charitable institution exempts it from taxes is irrelevant as Betsy King was only the tax collector of a patron tax paid by the attendees of the tournament. Section 4(a) of the Ordinance at issue provides:

> A tax is hereby imposed upon the sale of admission to places of amusement at the rate of ten per cent (10%) of the established price charged the general public, or a limited or selected group thereof, by any producer for such admission, **which shall be paid by the person acquiring the same.** (Emphasis added).

Because the person attending the event pays the tax, the amusement tax at issue is a patron tax, i.e., a tax levied on the person who purchases admission to an event, and where the promoter of the event, charitable entity or not, merely collects the tax due, its tax status is irrelevant. *Clearview Bowling Center, Inc. v. Borough of Hanover, York County*, 430 Pa. 579, 244 A.2d 20 (1968) (exemption from tax on personal property owned by proprietor of bowling alley irrelevant where amusement tax levied on patrons of bowling alley and not on proprietor); *Capitol Associates v. School District of Harrisburg*, 684 A.2d 1119 (Pa. Cmwlth.1996), *petition for allowance of appeal denied*, 550 Pa. 709, 705 A.2d 1311 (1998) (tax exemption for government authorities managing parking garage was irrelevant to patron tax because tax was levied on patrons of garage and not managers). Because Betsy King was only the collector of a patron tax, its tax-exempt status is irrelevant as it would be liable to tender the taxes it had collected from the attendees of the tournament to the Township of Richmond whether it was found to be a charitable institution or not.