**AK STEEL CORPORATION and John Maneely Company, Appellants,**

v.

**VIACOM, INC., Appellee.**

Superior Court of Pennsylvania.

Argued March 11, 2003.

Filed Nov. 3, 2003.

Stanley Yorsz, Grove City, for appellants.

Kenneth K. Kilbert, Pittsburgh, for appellee.

Before: TODD, BENDER, and KELLY, JJ.

TODD, J.

¶ 1 In this declaratory judgment action, AK Steel Corporation ("AK Steel") and John Maneely Corporation ("Maneely") appeal the Judgment entered April 22, 2002 by Order of the Mercer County Court of Common Pleas denying their post-trial motion and entering judgment in favor of Viacom, Inc. ("Viacom"). We affirm.

¶ 2 The events which led to the filing of this declaratory judgment action by Appellants were set forth by the trial court as follows:

By a deed dated July 23, 1986, Westinghouse Electric Corporation ("Westinghouse") conveyed to Cyclops Corporation certain property located in Sharon, Pennsylvania (hereinafter "the subject property"). In the Agreement of Sale preceding this conveyance (hereinafter "the 1986 Agreement"), "Seller" was defined as "Westinghouse Electric Corporation," and "Purchaser" was defined as "Sawhill Tubular Division of Cyclops Corporation."

Because the subject property had been used by Westinghouse as an industrial site and, incident thereto, became environmentally contaminated, Westinghouse agreed in the 1986 Agreement to be responsible for any remediation directed by a government agency and/or ordered by a court and, further, agreed to indemnify the "Purchaser" against certain other environmental liabilities.

The 1986 Agreement was only assignable to an entity that succeeded to substantially all of the assets of the Purchaser. In addition, the 1986 Agreement was binding upon and inured to the benefit of the parties and their successors and assigns.

At the commencement of this lawsuit, Defendant Viacom, Inc. ("Viacom") had succeeded to the rights and obligations of Westinghouse under the 1986 Agreement. Similarly, Plaintiff AK Steel ("AK Steel") contends that it has succeeded to the Purchaser's rights and obligations under the 1986 Agreement.

On December 7, 2001, Plaintiff AK Steel and Plaintiff John Maneely Company ("Maneely") executed a letter of intent (hereinafter "the Letter of Intent"), setting forth the basis for the negotiations of an agreement between the two corporations for the acquisition by Maneely of "all of the assets (except for those specifically excluded) which comprise or are used in the business known as the Sawhill Tubular Division of AK [Steel]." ... The sale of the assets contemplated by the Letter of Intent would include the sale of the subject property. Because the subject property is environmentally contaminated and currently subject to a remediation order issued by the United States Environmental Protection Agency, Maneely has informed AK Steel that it will not complete its intended purchase of the assets of the Sawhill Tubular Division unless Viacom is obligated, by way of the assignment of the 1986 Agreement to Maneely, to indemnify Maneely for any liability stemming from the environmental contamination of the subject property exist-

ing prior to the sale in 1986 of the subject property.

Defendant Viacom contends that the 1986 Agreement is not assignable to Maneely because, pursuant to the terms of the Letter of Intent, Maneely would not be purchasing substantially all of the assets of AK Steel. While admitting that to be true, both AK Steel and Maneely contend that (1) Maneely would be purchasing substantially all of the assets of Sawhill Tubular Division, and (2) such a purchase would be sufficient to permit the 1986 Agreement to be assigned to Maneely. The differing positions held by Plaintiffs and Defendant stem from the fact that the parties do not agree on what entity was the Purchaser in the 1986 Agreement. Defendant contends that the Purchaser was "Cyclops Corporation," whereas Plaintiffs contend that the Purchaser was "Sawhill Tubular Division," an unincorporated division of Cyclops Corporation.

On January 4, 2002, Plaintiff AK Steel commenced this action by filing a Complaint for Declaratory Judgment against Defendant Viacom, seeking a ruling from this Court that, pursuant to the terms of the Letter of Intent between AK Steel and Maneely, the 1986 Agreement is assignable to Maneely. AK Steel then filed a Motion to Expedite Pretrial Proceedings and Trial, which motion was granted on January 22, 2002. On February 5, 2002, AK Steel filed an Amended Complaint adding Maneely as a Plaintiff.

(Trial Court Opinion, 3/21/02, at 2–4.)

¶ 3 Following a one-day bench trial on February 27, 2002, the Honorable Michael J. Wherry issued a Decree Nisi concluding that only Cyclops Corporation, and not Sawhill Tubular, could have been the "Purchaser" under the 1986 Agreement, because a division of a corporation cannot own or possess property. Judge Wherry further concluded that because the 1986 Agreement may be assigned only to an entity that succeeds to substantially all of the assets of the Purchaser, and it is undisputed that Maneely does not intend to purchase substantially all of the assets of AK Steel Corporation, the 1986 Agreement is not assignable to Maneely.[1]

¶ 4 Plaintiffs filed a timely post-trial motion, and on April 23, 2002, the trial court entered a final decree denying Plaintiffs' post-trial motion and entering judgment in favor of Viacom. This appeal followed, in which Appellants present the following issues for this Court's review:

1. Did the trial court err when it ruled, as a matter of law, that Viacom's predecessor's promise to indemnify Sawhill Tubular for preexisting environmental conditions could not be assigned unless Sawhill Tubular's parent corporation, AK Steel, sells substantially all of its assets?

2. Did the trial court err in disregarding the manifest intention of the parties to the original Westinghouse–Sawhill Tubular contract, which expressly provided that Westinghouse's duty to indemnify could be assigned to any party that purchases substantially all of Sawhill Tubular's assets?

(Appellants' Brief at 6.)

¶ 5 Preliminarily, we note that our scope of review in a declaratory judg-

---

1. Section 9.04 of the 1986 Agreement provides:

   Assignment. Purchaser may not assign this Agreement except to an entity which succeeds to substantially all of the assets of Purchaser. Any such assignment shall relieve Purchaser of all of its liabilities and obligations hereunder to the extent assumed by such assignee.

   (1986 Agreement, 4/7/86, at 13.)

ment action is narrow. *O'Brien v. Nationwide Mut. Ins. Co.,* 455 Pa.Super. 568, 573, 689 A.2d 254, 257 (1997). We review the decision of the trial court as we would a decree in equity and set aside factual conclusions only where they are not supported by adequate evidence. *Id.* We give plenary review, however, to the trial court's legal conclusions. *Id.*

¶ 6 Appellants contend that the trial court disregarded the clear intent of the parties to the 1986 Agreement, and instead relied on an irrelevant principle of law to determine that Sawhill Tubular could not have been the Purchaser under the 1986 Agreement. Appellants further point out that the 1986 Agreement expressly identified Sawhill Tubular as the Purchaser.

¶ 7 As our Supreme Court explained in *Seven Springs Farm, Inc. v. Croker:*

> The primary objective of a court when interpreting a contract is to ascertain the intent of the parties. When "a written contract is clear and unequivocal, its meaning must be determined by its contents alone." Courts are not to assume that a contract's language was chosen carelessly or that the parties were ignorant of the meaning of the language they utilized.

569 Pa. 202, 207–08, 801 A.2d 1212, 1215 (2002) (citations omitted). Furthermore, "a contract incorporates the laws that exist at the time the contract is made," and a contract will be construed according to the law of the state, as interpreted by its courts. *Reif v. Reif,* 426 Pa.Super. 14, 23, 626 A.2d 169, 174 (1993).

¶ 8 Although the precise issue in the instant case appears to be one of first impression in this jurisdiction, the United States Court of Federal Claims was confronted with a similar issue in *General Dynamics Corporation v. United States,* 47 Fed. Cl. 514 (2000). In that case, a defense contractor, General Dynamics Corporation ("GDC") filed suit against the federal government alleging a breach of contract for the design of a nuclear submarine. Electric Boat Corporation ("EBC"), a wholly-owned subsidiary of GDC, subsequently filed a protective claim in response to a jurisdictional issue raised by the government, and the claims ultimately were consolidated. As a preliminary matter, the claims court was required to determine which corporation—GDC or its subsidiary EBC—was the contracting partner.

¶ 9 With regard to the relevant background in that case, in 1995, GDC had several divisions, including Electric Boat Division ("EBD"). In September 1995, EBD was reorganized into a wholly-owned subsidiary of GDC under the name of Electric Boat Corporation. During the period of reorganization, the government sent a solicitation for a contract proposal regarding the design of a nuclear submarine to "General Dynamics/Electric Boat Division." After EBD had been reorganized into EBC, however, a proposal was submitted to the government on the letterhead of "General Dynamics, Electric Boat Division." The proposal was signed by "John K. Welch, President—Electric Boat." Mr. Welch was the president and CEO of EBC, and vice president of GDC. In January 1996, the government awarded a letter contract[2] to "General Dynamics Corporation, Electric Boat Division" and the contract was signed by Mr. Welch, who identified himself as "President & CEO." In May 1996, the letter contract was finalized, and again the contractor was identified as "General Dynamics Corporation,

2. A letter contract is a written preliminary contractual instrument authorizing the contractor to obtain manufacturing supplies and/or to perform services immediately. *General Dynamics,* 47 Fed. Cl. at 518 n. 2.

Electric Boat Division." There were 38 additional modifications of the letter contract, 22 of which identified the contractor as "General Dynamics Corporation, Electric Boat Division", 12 of which identified the contractor as "Electric Boat Corporation, a General Dynamics Company" and 4 of which identified the contractor as "Electric Boat Corporation."

¶ 10 GDC maintained that it was the contractor because it was clearly identified as such in the letter contract. GDC further argued that the fact that "Electric Boat Division" appeared after "General Dynamics Corporation" was legally inconsequential since an unincorporated division does not have a legal status independent of the corporation. The government, however, argued, *inter alia*, that the contract was ambiguous on its face as to the identity of the contractor based on the fact that at the time the contract was executed, EBD was no longer a division of GDC, and because the contract was signed by the president and CEO of EBC, not GDC.

¶ 11 In concluding that GDC was the contracting partner, the court noted that GDC was identified as the contractor in the space providing for the name and address of the contractor in the letter contract and in the subsequent finalization. The court further stated that despite the fact that the actual entry on the contract documents was "General Dynamics Corporation, Electric Boat Division," such a designation was erroneous in that the Electric Boat Division no longer existed at that time. Finally, the court concluded that because the unincorporated Electric Boat Division was not a legal entity separate and apart from its parent GDC, "the only entry with legal import in the 'Name and Address of Contractor' box was 'General Dynamics Corporation.'" *Id.* at 530.

█ ¶ 12 Consistent with the holding in *General Dynamics* is this Court's holding in *Babich v. Karsnak*, 364 Pa.Super. 558, 565, 528 A.2d 649, 653 (1987), that a division of a corporation is not a separate legal entity capable of being sued. Moreover, in *Krumbine v. Lebanon Tax Claim Bureau*, 541 Pa. 384, 663 A.2d 158 (1995), our Supreme Court noted that an unincorporated association is not a legal entity and has no legal existence separate and apart from that of its individual members. *Id.* at 388, 663 A.2d at 160 (citations omitted). The Court further stated in *Krumbine* that only an entity with a recognized legal existence may own and possess property, and, therefore, property ownership by an unincorporated association is impossible absent statutory authority to the contrary. *Id.* (citing *Sumner v. Brown*, 312 Pa. 124, 128, 167 A. 315, 317 (1933)).

█ ¶ 13 Under the cases cited above, a determination that Sawhill Tubular was the purchaser under the 1986 Agreement would render other provisions of the 1986 Agreement illusory. As we stated in *Brown v. Cooke*, 707 A.2d 231 (Pa.Super.1998):

> Clauses in a contract should not be read as independent agreements thrown together without any consideration of their combined effect. Indeed, the document is best read as a whole, wherein clauses seemingly in conflict are construed, if possible, as consistent with one another. *In re Binenstock's Trust*, 410 Pa. 425, 190 A.2d 288 (1963). Terms in one section of the contract should not be interpreted in a manner which nullifies other terms.

*Id.* at 233 (quoting *Flatley by Flatley v. Penman*, 429 Pa.Super. 517, 521, 632 A.2d 1342, 1344 (1993)).

¶ 14 Section 2.02 of the 1986 Agreement required the Purchaser to accept title to the subject property at the closing or rescind the Agreement, and Section 3.02 of

the 1986 Agreement required the Seller to deliver to the Purchaser at closing a deed conveying the subject property. (1986 Agreement, 4/6/86, at 4–5.) Additionally, Section 4.04 of the 1986 Agreement required the Purchaser to ensure that the Seller or the Pennsylvania Department of Resources had access to the subject property in order to maintain wells situated thereon; to refrain from interfering with the integrity of the wells; to include certain provisions in any agreement of sale of the subject property; and to disclose the provisions of the 1986 Agreement to any subsequent Purchaser. (*Id.* at 4.) Under *Krumbine, supra,* Sawhill Tubular, as an unincorporated association, was incapable of performing any of these obligations since it could not own or possess property.[3] Thus, a determination that Sawhill Tubular, as opposed to Cyclops Corporation, was the Purchaser under the 1986 Agreement would nullify the provisions of the agreement noted above.

3. Indeed, the July 26, 1986 deed conveyed the subject property to Cyclops Corporation, not

¶ 15 The positions advanced on behalf of both Appellants and Appellee were well argued by counsel. However, for all of the foregoing reasons, we agree with Appellee and the trial court that only Cyclops Corporation, and not Sawhill Tubular, could have been the Purchaser under the 1986 Agreement. As it is undisputed that Maneely does not intend to purchase substantially all of the assets of AK Steel, the successor to Cyclops Corporation, under Section 9.04 of the 1986 Agreement, the agreement is not assignable to Maneely.

¶ 16 Order entering judgment **AFFIRMED**.