# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Safe Auto Insurance Company,     :
                 Petitioner     :
       :
       v.            :    No. 216 C.D. 2020
       :    Argued: September 15, 2020
Pennsylvania Insurance Department,    :
and Jessica K. Altman, in her official    :
capacity as the Pennsylvania Insurance    :
Commissioner,          :
               Respondents    :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**           **FILED: October 22, 2020**

Safe Auto Insurance Company (Safe Auto) petitions for review of an adjudication and order of the Insurance Commissioner of the Commonwealth of Pennsylvania (Commissioner), dated January 29, 2020. In her adjudication and order, the Commissioner reversed a determination made by the Pennsylvania Insurance Department (Department) that Safe Auto's cancellation of Thomas Trayer's (Trayer) automobile insurance policy (Policy) did not violate what is commonly known as Act 68,[1] the law governing the issuance, renewal,

---

[1] Act 68 is contained within Article XX of The Insurance Company Law of 1921, Act of May 17, 1921, P.L. 682, *as amended*, added by the Act of June 17, 1998, P.L. 464, 40 P.S. §§ 991.2001-.2013.

cancellation, and refusal of automobile insurance in Pennsylvania. For the reasons set forth below, we affirm the Commissioner's adjudication and order.

The underlying facts of this case are not in dispute. On November 22, 2018, Safe Auto issued the Policy to Trayer on his 2005 Dodge Grand Caravan. (Reproduced Record (R.R.) at 162a-74a.) The fees associated with the Policy included an initial six-month premium of $872, a previous policy balance of $40, and installment fees of $50. (*Id.* at 163a.) Trayer paid the minimum down payment of $186 to Safe Auto on November 22, 2018, leaving a balance of $776 that Trayer would be required to pay to Safe Auto in five equal installments. (*Id.* at 163a, 189a.) On November 28, 2018, six days after Trayer made the minimum down payment on the Policy, Safe Auto sent Trayer an installment bill notice indicating that a payment in the amount of $156 was due on December 5, 2018. (*Id.* at 177a-78a.) The November 28, 2018 installment bill notice contained the following statement:

> Please include the policy number on your check or money order made payable to Safe Auto. *Acceptance of any payment is conditioned on the payment being honored upon presentment.* Dishonored payments are subject to a $20 fee. To ensure continued coverage, please pay the current amount due.

(*Id.* at 177a (emphasis added).) Specifically with respect to telephone payments, however, the November 28, 2018 installment bill notice also provided that "[p]ayments are effective the date and time the checking account information is relayed to our Customer Service Representative or our Automated Attendant." (*Id.* at 178a.)

On December 3, 2018, Trayer contacted Safe Auto to determine why he had received a bill so soon after the Policy had been issued and he had made the minimum down payment. (*Id.* at 132a-33a.) At that time, a Safe Auto representative informed Trayer that the installment bill notice did not apply to him because his

2

payment was not directly debited from his checking account and that, due to the fact that he would be making his payment over the telephone, he could ignore the installment bill notice and make his payment later in the month. (*Id.* at 133a.) Because he is on a fixed income that is automatically deposited into his credit union account at the end of each month—social security on the third Wednesday and his pension on the last business day—Trayer did not make the premium payment by December 5, 2018. (*Id.* at 94a-95a, 134a-35a, 147a-48a.) As a result, on December 6, 2018, Safe Auto sent Trayer a cancellation notice for nonpayment of premium. (*Id.* at 182a-83a.) In the cancellation notice, Safe Auto informed Trayer that it would cancel the Policy effective December 22, 2018, if it did not receive Trayer's premium payment prior to that date. (*Id.* at 182a.) A Safe Auto representative also contacted Trayer by telephone to remind him about the past-due payment and to advise him that Safe Auto would cancel the Policy on December 22, 2018, if it did not receive his premium payment. (*Id.* at 188a-89a.) Despite these notices, Trayer failed to make his premium payment, and Safe Auto canceled the Policy effective as of December 22, 2018. (*Id.* at 51a.)

On December 24, 2018, Trayer contacted Safe Auto to make a payment and reinstate the Policy. (*Id.* at 49a-51a.) On that date, Trayer authorized Safe Auto to withdraw $166—the $156 premium that had been due on December 5, 2018, and a $10 reinstatement fee—from his credit union account to reinstate the Policy effective as of December 24, 2018. (*Id.* at 51a-52a, 133a-34a, 188a, 232a.) At the time of his authorization, Trayer believed that he had approximately $200 in his credit union account, which would have been sufficient to cover the $166 payment to Safe Auto. (*Id.* at 135a.) In addition, both Safe Auto and Trayer believed that the Policy had been reinstated and that Safe Auto owed a coverage obligation to Trayer.

3

(*Id.* at 55a, 91a-92a, 100a, 113a.) During the December 24, 2018 call, the Safe Auto representative also informed Trayer that his next premium payment was due on January 5, 2019, and that Safe Auto would cancel the Policy on January 19, 2019, if it did not receive his premium payment prior to that date. (*Id.* at 188a.)

Three days later, on December 27, 2018, Trayer was involved in an automobile accident. (*Id.* at 136a.) The next morning, Trayer reported the accident to Safe Auto. (*Id.*) At that time, a Safe Auto representative indicated to Trayer that his Policy was in effect and that there were no issues with his coverage. (*Id.* at 137a.) A few days later, however, Trayer contacted Safe Auto again, and a Safe Auto representative informed him that there was a "flag" on his account that may cause a problem with his coverage. (*Id.* at 137a-38a.) In fact, on January 4, 2019, Safe Auto specifically noted on Trayer's account: "RED FLAG (DO NOT ACCEPT LATE PAYMENT) – RF Total Loss – 5 DODGE GRAND CARAVAN SXT." (*Id.* at 187a.) Safe Auto claimed to have flagged Trayer's account, not to avoid paying the accident claim, but because Trayer's vehicle, the only vehicle on the Policy, was a total loss and could not be insured. (*Id.* at 96a-97a.) In that regard, on January 4, 2019, the same date that it "flagged" Trayer's account, Safe Auto sent Trayer a letter, informing him that totaled vehicles did not meet Safe Auto's underwriting guidelines and that failure to remove the totaled vehicle from his Policy could result in the cancellation or nonrenewal of the Policy. (*Id.* at 241a.)

In the meantime, on December 26, 2018, Safe Auto sent Trayer an installment bill notice indicating that a premium payment in the amount of $278 was due on January 2, 2019. (*Id.* at 238a-39a.) The December 26, 2018 installment bill notice contained the same statements regarding acceptance of payments and telephone payments as the November 28, 2018 installment bill notice. (*Id.* at 225a-26a.) When

4

Trayer did not make the January 2, 2019 payment, Safe Auto sent Trayer a cancellation notice for nonpayment of premium dated January 3, 2019. (*Id.* at 240a.) The cancellation notice informed Trayer that Safe Auto would cancel his Policy effective January 19, 2019, if it did not receive his premium payment prior to that date. (*Id.*)

Thereafter, on January 7, 2019, Safe Auto learned from its financial institution that Trayer's December 24, 2018 telephone payment in the amount of $166 had been dishonored by his financial institution for insufficient funds. (*Id.* at 53a-54a, 68a, 190a-91a.) On that same date, Safe Auto sent Trayer a letter, which provided:

> [W]e regret to inform you that your payment dated [December 24, 2018,] in the amount of [$166] was not honored upon presentment to your financial institution.
>
> Currently, you have a balance due. In addition to your previous amount due, a returned payment fee was applied to your policy balance and the minimum amount due is now $393.00. If the amount due is not paid on time, a new policy will be required in order to restart coverage. To avoid cancellation please do not delay in making payment.

(*Id.* at 243a.) Also on that same date, Safe Auto issued a separate and contradictory notice to Trayer entitled "Confirmation of Cancellation," which informed Trayer that his Policy had been canceled effective December 24, 2018, for "Non-Payment of Premium – Non-Sufficient Funds." (*Id.* at 244a.) On January 16, 2019, Trayer contacted Safe Auto and attempted to make the $393 required minimum payment, but Safe Auto refused to accept Trayer's payment. (*Id.* at 95a-96a, 100a, 144a, 186a-87a.)

By letter dated January 16, 2019, Trayer requested that the Department review Safe Auto's cancellation of his Policy. (*Id.* at 1a-2a.) Thereafter, on March 8, 2019, the Department issued an investigative report, wherein the Department concluded

5

that Safe Auto met the requirements of Act 68 and, therefore, was permitted to cancel Trayer's Policy. (*Id.* at 3a-4a.) In so doing, the Department explained:

> Act 68 permits an insurance company to cancel your policy if you did not pay the required premium by the due date. Even if you paid after the due date, or before the effective date of the cancellation. Act 68 does not require the insurance company to continue your policy. The company must receive the payment by the due date; mailing the payment on the due date will not prevent cancellation of your policy.

(*Id.* at 3a.) By letter dated March 19, 2019, Trayer appealed the Department's determination by requesting a formal administrative hearing, alleging that, upon learning that his payment to Safe Auto had been returned for insufficient funds, Trayer contacted Safe Auto and attempted to make a subsequent payment, but Safe Auto refused to accept Trayer's payment in contravention of the cancellation notices that Trayer had previously received from Safe Auto. (*Id.* at 5a.) The Commissioner appointed a Presiding Officer, who conducted an administrative hearing on September 25, 2019.

Following the administrative hearing, on January 29, 2020, the Commissioner issued an adjudication and order, reversing the Department's determination. In so doing, the Commissioner concluded that Safe Auto's retroactive cancellation of Trayer's Policy violated Act 68. The Commissioner reasoned:

> Trayer was given no prior notice that his [P]olicy would cancel, lapse or continue to lapse on December 24, 2018. The December 6, 2018 cancellation notice notified him that the [P]olicy would cancel on December 22[, 2018,] but not that a subsequent reinstatement would be reversed or be conditional. Both parties considered the [P]olicy to be reinstated on December 24, [2018,] and Safe Auto continued to behave as if the original policy was in force: the original policy number was used for subsequent documents; the policy period remained from November 22, 2018[,] through May 22, 2019; invoice instructions provided that payment by telephone check was "effective" the date and time the information was relayed to Safe Auto; the invoice instructions

6

state that dishonor may result in future restrictions on payments but not retroactive voiding of the reinstatement; Safe Auto issued an Act 68 cancellation notice for the nonpayment on January 3, 2019; [and] the January 7, 2019 notice of dishonor allowed [Trayer] to cure the failed payment. Absent the January 7[, 2019] "Confirmation of Cancellation," the [P]olicy would have continued in force until January 19, 2019, and beyond that date if [Trayer] had been allowed to make the payment to cure the dishonor and prevent the cancellation. In short, the [P]olicy was reinstated on December 24, 2018[,] in accordance with the evidenced intent of both parties.

Whether that reinstatement is viewed as conditional or unconditional, the [P]olicy only terminated when Safe Auto issued the "Confirmation of Cancellation" on January 7, 2019[,] with a "cancellation date" and time effective December 24, 2018[,] at 12:09 p.m. Without that action, the [P]olicy would have continued until at least January 19, 2019. The "Confirmation of Cancellation" contradicted or revoked the insurer's January 7, 2019 offer which allowed [Trayer] to cure the dishonor. The termination of the reinstated [P]olicy thus operated as a retroactive cancellation of the [P]olicy or rescission of the reinstatement. However viewed, it was a retroactive termination of the [P]olicy by [Safe Auto's] actions and not an automatic termination by operation of law.

Nonetheless, a retroactive cancellation or rescission without prior notice is permissible under some circumstances. An insurer may rescind a policy retroactively during the first sixty days of the policy when the insured has made a fraudulent misrepresentation material to the risk assumed by the insurer. . . .

. . . .

Safe Auto does not argue, and did not establish, that [Trayer] fraudulently obtained the [P]olicy or its reinstatement through a fraudulent misrepresentation. An insured's inadvertent and accidental issuance of a check subsequently dishonored and marked "nsf" does not constitute fraud or misrepresentation. The only evidence as to [Trayer's] state of mind when he wrote the check is his credible testimony that he believed sufficient funds to be available on December 24, 2018, a belief corroborated by the timing of his monthly fixed income direct deposits. Notice of dishonor of the check occurred two full weeks later, and [Trayer] was given no opportunity in the interim or thereafter to cure the dishonor. There is no evidence as to how and when the check was presented to [Trayer's] credit union by Safe Auto's depository bank. Other than the obvious materiality of a

7

company receiving timely premium payments, the elements of fraudulent misrepresentation were not established in the present case and Safe Auto does not assert otherwise.

. . . .

. . . Safe Auto acted in compliance with Act 68 when it issued the notice of cancellation effective January 19, 2019. However, [Safe Auto] superseded that lawful termination with an unlawful one when it terminated the [P]olicy retroactively and did not accept [Trayer's] payment to keep the [P]olicy in force.

(Commissioner's Adjudication and Order at 14-18 (footnotes omitted) (citations omitted).) Safe Auto then petitioned this Court for review.

On appeal,[2] Safe Auto essentially argues that the Commissioner committed an error of law by concluding that Safe Auto violated Act 68 by retroactively canceling Trayer's Policy because Trayer did not effectively reinstate the Policy on December 24, 2018, and, therefore, the Policy remained terminated/canceled as of December 22, 2018. More specifically, Safe Auto contends that its offer to reinstate Trayer's Policy on December 24, 2018, was conditioned upon Trayer making his premium payment, which he did not do as his payment was ultimately dishonored by his financial institution. Safe Auto further contends that, because Trayer's premium payment was dishonored by his financial institution, the Policy was not reinstated on December 24, 2018, and, therefore, Act 68 did not require Safe Auto to provide Trayer with any additional notices before notifying him that the Policy had been canceled effective December 24, 2018, for nonpayment of premium.

In response, the Department and the Commissioner argue that the Commissioner properly concluded that Safe Auto violated Act 68, because the

_____

[2] "This Court's review of the Commissioner's adjudication and order is limited to determining whether an error of law was committed, constitutional rights were violated or necessary factual findings are supported by substantial evidence." *Frederick Mut. Ins. Co. v. Pa. Ins. Dep't*, 214 A.3d 297, 303 n.11 (Pa. Cmwlth. 2019).

8

evidence of record establishes that Safe Auto reinstated Trayer's Policy on December 24, 2018, and thereafter retroactively canceled such reinstated Policy effective December 24, 2018. More specifically, the Department and the Commissioner contend that Safe Auto's retroactive cancellation of the Policy was improper because Safe Auto did not provide Trayer with notice that Safe Auto would cancel the Policy on December 24, 2018, and Safe Auto prohibited Trayer from making a premium payment in connection with the January 7, 2019 cancellation notice. In other words, the Department and the Commissioner contend that Safe Auto acted in compliance with Act 68 when it issued the January 7, 2019 cancellation notice, but thereafter Safe Auto superseded this proper action by retroactively terminating the Policy effective December 24, 2018, and by rejecting Trayer's attempts to make his premium payment in January 2019. Similarly, Trayer argues that the Commissioner properly concluded that Safe Auto violated Act 68 because Safe Auto failed to provide him with a proper notice before terminating/canceling his reinstated Policy on December 24, 2018, and refused to accept his proffered payments in an attempt to avoid cancellation of the Policy on January 19, 2019.

Act 68 establishes a regulatory scheme in Pennsylvania that prohibits insurance companies from cancelling, refusing to write, and refusing to renew automobile insurance policies for certain discriminatory reasons. *See* Section 2003 of Act 68, 40 P.S. § 991.2003. A valid, nondiscriminatory reason for an insurance company to cancel an automobile insurance policy is nonpayment of premium. Section 2004(1) of Act 68, 40 P.S. § 991.2004(1). Before an insurance company's cancellation of an automobile insurance policy for nonpayment of premium will be effective, however, the insurance company must provide the named insured with

9

written notice of its intention to cancel the automobile insurance policy. Section 2006 of Act 68, 40 P.S. § 991.2006. The written notice of cancellation must state both the specific reason for the cancellation and the date, which cannot be less than fifteen days from the date of mailing, that the cancellation will become effective. *Id.* Although Act 68 does not generally apply to automobile insurance policies that have been in effect for less than sixty days, an insurance company seeking to cancel an automobile insurance policy within the first sixty days of its issuance of the policy is required to provide the insured with a written statement of the reason for cancellation. Section 2002(c)(3) of Act 68, 40 P.S. § 991.2002(c)(3).

Stated simply, the issue presented in this case is whether Safe Auto violated Act 68 by failing to provide Trayer with proper notice in connection with its cancellation of the Policy effective December 24, 2018. Safe Auto contends that it was not required to provide Trayer with notice of its intent to cancel the Policy effective December 24, 2018, because Trayer was unsuccessful in his attempt to reinstate the Policy on that date. In other words, Safe Auto suggests that it accepted Trayer's authorization to withdraw funds from his checking account as a conditional payment for the proposed reinstatement of the Policy and that, because such payment was eventually dishonored by Trayer's financial institution for insufficient funds, the Policy was never actually reinstated. In support of this argument, Safe Auto relies on *Wendkos v. Scranton Life Insurance Company*, 17 A.2d 895 (Pa. 1941), *Brady v. Northwestern Masonic Aid Association*, 42 A. 962 (Pa. 1899), *O'Brien v. Nationwide Mutual Insurance Company*, 689 A.2d 254 (Pa. Super. 1997), *Fisher v. American National Insurance Company*, 137 F. Supp. 902 (E.D. Pa. 1956), and *Silverman v. New York Life Insurance Company*, 2 F. Supp. 184 (W.D. Pa. 1932), for the proposition that "an insurer accepts payment by check upon the condition

10

that the payment is ultimately honored, absent an express agreement otherwise," and "if the conditional payment is not honored, there is no proper offer and acceptance and the insurance contract is not consummated." (Safe Auto's Br. at 10.) While these cases may support the proposition that, under general contract law, a check is a conditional form of payment that must ultimately be honored by a financial institution to be effective, the Commissioner did not find these cases to be relevant or persuasive in deciding the issue presented in this case. Neither do we.

This Court has previously noted that at least one of the purposes of Act 68 is to provide an insured with "adequate time, prior to cancellation, to prevent an insured from unknowingly operating [his/her automobile] without insurance." *Liberty Mut. Ins. Co. v. Maleski*, 658 A.2d 463, 466 (Pa. Cmwlth. 1995) (*Maleski*).[3] In light of this purpose, as well as the protections provided to insureds by Act 68, Safe Auto cannot rely on cases such as *Wendkos*, *Brady*, *Fisher*, and *Silverman* that do not even involve automobile insurance policies, let alone the protections of Act 68. *See Wendkos*, 17 A.2d at 896-97 (involving life insurance policy); *Brady*, 42 A. at 962-63 (involving life insurance policy); *Fisher*, 137 F. Supp. at 903-05 (involving life insurance policy); and *Silverman*, 2 F. Supp. at 184-87 (involving life insurance policy). In addition, although it involves an automobile insurance policy and the facts of the case are similar to the facts of this case—*i.e.*, the insured's check for the premium payment was ultimately dishonored by the insured's financial institution for insufficient funds—*O'Brien* also does not provide Safe Auto with the

---

[3] Although *Maleski* was decided prior to the General Assembly's passage of Act 68 under what was commonly known as Act 78, Act of June 5, 1968, P.L. 140, *as amended*, *formerly* 40 P.S. §§ 1008.1-.11 (repealed by Act 68), many cases construing Act 78, including *Maleski*, continue to be applicable and have precedential value to cases addressing Act 68, because the provisions of Act 68 substantially reenacted the provisions of Act 78. *See Lewis v. Ins. Dep't*, 935 A.2d 36, 37 n.3 (Pa. Cmwlth. 2007).

support it seeks, because *O'Brien* involved an assigned risk policy that is governed by its own separate set of statutory provisions, not Act 68. *See O'Brien*, 689 A.2d at 256-59 (noting that insured's assigned risk policy was void *ab initio*, not canceled, because check for initial premium payment was dishonored).

To establish that Trayer was unsuccessful in his attempt to reinstate the Policy on December 24, 2018, Safe Auto would have to direct our attention to somewhere within Act 68, the case law interpreting Act 68, the Policy, or Safe Auto's other Policy-related documents, wherein it establishes that acceptance of payment and reinstatement of coverage is conditional upon such payment being honored by the insured's financial institution. Safe Auto suggests that this language can be found in its installment bill notice, which provides that "[a]cceptance of any payment is conditioned on the payment being honored upon presentment." We disagree. First, the same installment bill notice that Safe Auto relies upon also provides that, with respect to telephone payments, "[p]ayments are effective the date and time the checking account information is relayed to [Safe Auto's] Customer Service Representative or [Safe Auto's] Automated Attendant." (R.R. at 178a.) Second, the installment bill notice did not provide Trayer with notice of what would happen if the conditional payment was not honored/accepted—*i.e.*, that Safe Auto would not reinstate the Policy effective December 24, 2018. Third, Trayer was not making a regular installment payment on December 24, 2018; rather, the Policy had been canceled effective December 22, 2018, and Trayer was seeking to reinstate the Policy by paying all past due amounts plus a reinstatement fee. The record does not contain any evidence to suggest that Safe Auto provided Trayer with a written notice similar to the installment bill notice that would have advised Trayer that his payment to reinstate the Policy, different from a regular installment payment, was conditional.

12

Moreover, Safe Auto seems to ignore a key finding made by the Commissioner—*i.e.*, that the Policy was reinstated on December 24, 2018. The Commissioner specifically found that, based on the facts and circumstances of this case and the evidenced intent of both parties, the Policy was reinstated on December 24, 2018. Safe Auto further suggests that "[t]he Commissioner's decision paves the way for a dangerous[] and absurd precedent," because, "[i]f the Commissioner's decision is allowed to stand, this case may be cited for the proposition that an individual could purportedly make a down payment for automobile[ ]insurance coverage via a bank transfer or credit[ ]card payment only to then cancel, or dispute, that transfer or payment." (Safe Auto's Br. at 14.) In making this suggestion, Safe Auto would like this Court to believe that this case is about the potential for an insurance company to be required to provide an insured with insurance coverage without the insured having paid for such coverage, when in fact this case is about how Safe Auto treated its insured under the circumstances. There has been no suggestion that Trayer acted fraudulently when he authorized Safe Auto to withdraw the $166 from his credit union account on December 24, 2018. In fact, Trayer believed that his credit union account contained sufficient funds to cover the payment at the time of his telephone authorization. Safe Auto believed that the Policy had been reinstated on December 24, 2018, and thereafter treated Trayer as if the Policy had in fact been reinstated. Safe Auto could have informed Trayer that the Policy would only have been reinstated if his telephone payment was honored by his financial institution, but it did not do so.

For all of the above-stated reasons, we conclude that the Commissioner did not commit an error of law by concluding that Safe Auto violated Act 68 when it retroactively canceled Trayer's Policy effective December 24, 2018, without

13

providing Trayer notice of its intent to cancel the Policy on that date. Accordingly, we affirm the Commissioner's adjudication and order.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Safe Auto Insurance Company,                    :
                              Petitioner        :
                                                :
          v.                                    :   No. 216 C.D. 2020
                                                :
Pennsylvania Insurance Department,              :
and Jessica K. Altman, in her official          :
capacity as the Pennsylvania Insurance          :
Commissioner,                                   :
                              Respondents        :

# **O R D E R**

AND NOW, this 22nd day of October, 2020, the adjudication and order of the Insurance Commissioner of the Commonwealth of Pennsylvania, dated January 29, 2020, is hereby AFFIRMED.

P. KEVIN BROBSON, Judge