J-E01002-16

2016 PA Super 177

| DANIELLE FISHER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| A.O. SMITH HARVESTORE PRODUCTS, INC.; A.O. SMITH CORPORATION; A.O. SMITH (HARVESTORE PRODUCTS); HARVESTORE SYSTEMS T/D/B/A HARVESTORE; COLUMBIAN TEC TANK; CST INDUSTRIES, INC.; AND PENN JERSEY PRODUCTS, INC. | |
| APPEAL OF: CST INDUSTRIES, INC. | No. 727 EDA 2013 |

Appeal from the Order Entered February 8, 2013
In the Court of Common Pleas of Bucks County
Civil Division at No: 2011-03913

| DANIELLE FISHER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| A.O. SMITH HARVESTORE PRODUCTS, INC.; A.O. SMITH CORPORATION; A.O. SMITH (HARVESTORE PRODUCTS); HARVESTORE SYSTEMS T/D/B/A HARVESTORE; COLUMBIA TEC TANK; CST INDUSTRIES, INC.; AND PENN JERSEY PRODUCTS, INC. | |
| APPEAL OF: CST INDUSTRIES, INC. | No. 1960 EDA 2013 |

Appeal from the Order Entered June 13, 2013
In the Court of Common Pleas of Bucks County
Civil Division at No: 2011-03913

| DANIELLE FISHER | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| A.O. SMITH HARVESTORE PRODUCTS, INC.; A.O. SMITH CORPORATION; A.O. SMITH (HARVESTORE PRODUCTS); HARVESTORE SYSTEMS T/D/B/A HARVESTORE; COLUMBIA TEC TANK; CST INDUSTRIES, INC.; AND PENN JERSEY PRODUCTS, INC. | |
| APPEAL OF: A.O. SMITH CORPORATION | No. 2000 EDA 2013 |

Appeal from the Order Entered June 13, 2013
In the Court of Common Pleas of Bucks County
Civil Division at No: 2011-03913

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, SHOGAN, LAZARUS, MUNDY, OTT, STABILE, and DUBOW, JJ.

CONCURRING OPINION BY DUBOW, J.:                **FILED AUGUST 12, 2016**

I concur with the result of the majority that the trial court erroneously granted the Motion for Summary Judgment in favor of A.O. Smith and against CST, but find the following alternate analysis more compelling.

**Introduction**

The sole issue in this case is whether the Asset Purchase Agreement ("APA") into which CST and A.O. Smith ("Smith") entered requires CST to indemnify Smith for a products liability lawsuit filed against Smith for

injuries the plaintiff sustained using a roller mill ("Roller Mill Lawsuit"). A defunct subsidiary of Smith manufactured the roller mill in 1981.

As discussed in greater detail below, the indemnification provision at issue does not require CST to indemnify Smith for the Roller Mill Lawsuit for several reasons. First, the Roller Mill Lawsuit did not exist at the time the parties closed on the APA and the indemnification provision only requires indemnification for "Assumed Liabilities" that existed "as of the Closing Date." Since the plaintiff did not file the Roller Mill Lawsuit until after the Closing Date, the Roller Mill Lawsuit did not exist as of the date of the Closing and cannot be included in the definition of "Assumed Liabilities."

Second, the "Assumed Liabilities" provision only includes liabilities "relating to the Division, the Business or the Purchased Assets." The division, business, and purchased assets relate to the "designing, engineering, manufacturing, marketing and erecting liquid and dry bulk storage tanks." APA, Preamble, 12/15/00, at ¶ 2. Since the Roller Mill Lawsuit involves a claim arising from the roller mill business that Smith's defunct subsidiary engaged in, and is completely unrelated to the business that ESPC engaged in, the trial court cannot reasonably interpret the Roller Mill Lawsuit to be included in the definition of Assumed Liabilities.

Finally, I find that the trial court erroneously treated ESPC as a subsidiary of Smith, rather than as a division, and by doing so, misinterpreted the APA. The trial court mistakenly found that ESPC held the

liability for Roller Mill Lawsuit and, thus, could transfer the liability for the lawsuit to CST along with other liabilities. The trial court based this conclusion on the erroneous factual finding that when Smith dissolved its subsidiary that manufactured roller mills and created ESPC as a division, that Smith transferred the liability for roller mill litigation to ESPC.

This conclusion is incorrect because Smith created ESPC as a division of Smith and not a subsidiary. A division has no legal existence independent from the larger corporate entity, and is merely an accounting construct. As such, a division has no legal ability to hold, accept, or transfer any type of liability. At all times, therefore, it was Smith—and not ESPC—that held the Roller Mill Lawsuit liability. Therefore, when Smith sold the assets and certain liabilities of ESPC to CST, the parties could not have contemplated that they implicitly agreed to transfer the Roller Mill Lawsuit, a liability for a business unrelated to ESPC and for which ESPC had no connection.

**Indemnification Provision of the Asset Purchase Agreement**

The relevant portion to the Indemnification Provision requires CST to indemnify Smith for damages from failing to pay, perform, and discharge any of the "Assumed Liabilities:"

> Indemnification by Buyer. Subject to the limitations and qualifications set forth in Section 11.7 and the other terms and conditions of this Article XI, the Buyer shall indemnify the Seller, and its officers, directors, employees, shareholders, agents and representative against and hold them harmless from any Damages incurred or sustained by Seller or any of its shareholders, officers or directors as a result of (i) the breach of any term, provision, covenant or agreement contained in this

- 4 -

Agreement by Buyer; (ii) any inaccuracy in any of the representations or warranties made by Buyer in Article III of this Agreement; (iii) **Buyer's failure to pay, perform and discharge, when due, any of the Assumed Liabilities**; and (iv) the operation of the Business by Buyer following the Closing.

APA, § 11.2 (emphasis added).

We must next examine the definition of "Assumed Liabilities." The introductory provision of the definition of "Assumed Liabilities" provides that "**Assumed Liabilities**" means only "the following liabilities of Seller relating to the Division, the Business or the Purchased Assets **as of the Closing Date** (hereinafter defined),. . . " APA, at § 1.2.1 (emphasis added). In other words, in order for CST to assume a liability, the liability must exist as of the closing date and the liability must relate to the business of ESPC.

As an initial matter, it is undisputed that the Roller Mill Lawsuit, which the plaintiff filed in 2013, did not exist "as of the Closing Date," which occurred in 2000. Thus, the Roller Mill Lawsuit cannot meet the definition of "Assumed Liabilities." For this reason alone, the trial court erroneously held that CST must indemnify Smith.

Additionally, the Roller Mill Lawsuit does not "relat[e] to the Division, the Business or the Purchased Assets." The APA defines ESPC as a division of Smith "engaged in the business of designing, engineering, manufacturing, marketing and erecting **liquid and dry bulk storage tanks**." APA, Preamble, at ¶ 2 (emphasis added). Since the business of manufacturing roller mills is separate and distinct from the business of bulk storage tanks, the trial court again misinterpreted the APA in concluding that the

- 5 -

manufacturing of roller mills related to the business of ESPC and holding that CST, therefore, must indemnify Smith.

The trial court relies on a list of product liability cases in the APA in which the parties listed individual cases in which CST would assume the liability and infer that the parties intended to include the Roller Mill Lawsuit in that list. However, the Roller Mill Lawsuit did not exist at the time the parties made the list and there is no language in the exhibit or anywhere in the APA that imposes on CST the obligation to indemnify Smith for a potential lawsuit for an unrelated business. In fact, the APA, by limiting the definition of "Assumed Liabilities" to those liabilities that exist "as of the Closing Date," did just the opposite.

**ESPC Had No Legal Ability to Hold the Roller Mill Liability**

The trial court bases its conclusion that Smith transferred the liability for the Roller Mill Lawsuit to CST pursuant to the APA on the assumption that Smith had "transferred" the liability to ESPC and, thus, ESPC could transfer it to CST pursuant to the APA. ESPC, however, was a division of Smith and not a subsidiary and, as such, could not hold or transfer the liability for the Roller Mill Lawsuit. The corporate history of the entities involved demonstrate this.

Transaction Between Harvestore and Recknell in 1996

Smith was the parent of a wholly owned subsidiary named A.O. Smith Harvestore Products, Inc. ("Harvestore"), which manufactured automated

agricultural products, including roller mills. In 1996, Harvestore, entered into an Asset Purchase Agreement with Recknell Industries, Ltd. ("Recknell"), in which Recknell purchased certain assets and assumed certain liabilities of Harvestore. As part of the agreement, however, Harvestore retained any liabilities arising from its products manufactured before 1996. Recknell Agreement, 9/3/96, at § 3.1.

Since the Roller Mill Lawsuit was based upon a roller mill manufactured after 1996, the liability for the lawsuit remained with Smith, even though Smith had transferred all of the assets related to the roller mill business to Recknell.

Smith Dissolves Harvestore in 1997

In 1997, Smith, as the parent of Harvestore, dissolved Harvestore.[1] It is undisputed that, in so doing, all of the assets and liabilities of Harvestore reverted back to Smith.[2] Those liabilities included any lawsuits that arose from products that Harvestore manufactured before 1996.

_____

[1] **See** Certificate of Dissolution, 7/31/97.

[2] As discussed, **infra**, I would find that the trial court and the Majority have erroneously concluded that when "Smith dissolved Harvestore in 1997[, it] transferred its assets and liabilities to a division of Smith known as Engineered Storage Products Company ('ESPC')." **See** Majority Opinion at 6; **see also** Trial Ct. Op., 10/1/13, at 3.

Smith Creates ESPC in 1997

In 1997, Smith created a division and named it ESPC, whose business activities involved the design and manufacture of bulk storage tanks. As discussed in more detail below, ESPC is a division, and not a subsidiary of Smith, and thus, has no separate legal existence from Smith.[3]

The Provisions of the APA Demonstrate That It is Smith and Not ESPC That Held the Liability for the Roller Mill Lawsuit.

Analysis of the APA demonstrates that ESPC was a division with no legal authority to hold assets and it was Smith who owned the assets that were related to ESPC's business. First, the Preamble of the APA, which identifies the parties to the transaction, lists CST as the buyer of the assets and Smith as the seller of the assets:

> THIS AGREEMENT (this "Agreement"), dates as of the 15th day of December, 2000, is made by and between **A.O. SMITH CORPORATION**, a Delaware corporation (hereinafter "Seller"), and **CST INDUSTRIES, INC.**, a Delaware corpration (hereinafter "Buyer").

APA, Preamble, at ¶ 1 (underscoring in original, emphasis added).

As is clear from the language of the APA, the parties to the agreement are Smith and CST. Notably, ESPC is not a party to the agreement. This is undoubtedly so because ESPC is a division of Smith, and not an independent corporate entity and thus, has no legal authority to enter into the APA.

---

[3] ***See AK Steel Corp. v. Viacom, Inc.***, 835 A.2d 820, 824 (Pa. Super. 2003) ("[A] division of a corporation is not a separate legal entity capable of being sued").

Moreover, the parties acknowledge that it is Smith who is engaged in the bulk storage tank and operates that business through ESPC:

> **The Seller, through its division, Engineered Storage Products Company (the "<u>Division</u>"), is engaged in the business** of designing, engineering, manufacturing, marketing and erecting liquid and dry bulk storage tanks.

*Id.* at ¶ 2 (emphasis added).

In fact, the Preamble further provides that Smith "desires to sell the Division as an ongoing business and delegate such liabilities to the Buyer." Once again, the APA is clear that it is Smith, and not ESPC, who is selling assets and liabilities to CST.

Finally, the Preamble further recognizes that ESPC has no legal existence when it instructs that if a provision in the agreement treats ESPC as if it has legal rights or obligations, then the parties are to impute those rights and obligations to Smith:

> The term "<u>Division</u>" is sometimes used herein as though it were a separate entity; when so used the term means that the Seller is the entity referred to, but only insofar as the activities, assets or liabilities relate to the Division and are accounted for as part of the Division's activities.

*Id.*[4]

---

[4] This part of the analysis is where we diverge from the Majority Opinion. Our interpretation of this provision is that the language of the provision is clear and unambiguous.

Thus, the APA makes clear that ESPC has no corporate existence separate from Smith. It is Smith, and not ESPC, that holds the assets and liabilities and it is Smith, and not ESPC, who is transferring those assets and liabilities to CST.

The trial court's conclusion that Smith transferred the liability for the Roller Mill Lawsuit to ESPC is contrary to basic principles of corporate law. As a division, ESPC has no independent legal existence and cannot hold assets or incur liabilities.[5] **See AK Steel**, **supra**; **see also In re Federal-Mogul Global, Inc.**, 411 B.R. 148, 164 (Bankr. D. Del. 2008) ("Operating divisions of corporations that are not themselves incorporated . . . are not legal persons" and "any liabilities arising out of the operations of such a divisions run against the corporation that contains the division").

The trial court disregards these principles of corporate structures and the unambiguous language in the APA and reasons that since Smith transferred the Roller Mill Liability to ESPC, the Roller Mill Liability was included in the liabilities that the APA transfers to CST. However, there is no legal basis or authority for Smith to transfer the liability of the Roller Mill Lawsuit to ESPC.

_____

[5] This point was not lost on CST, although the Majority has not addressed it. In its Appellate Brief, CST stated: "Indeed, it is meaningless for A.O. Smith to contend that 'all' of Harvestore's remaining assets and liabilities were 'transferred' to ESPC, given that ESPC was never a separate or stand-alone entity." Appellant's Brief at 37 n.10.

The trial court bases its conclusion that the liabilities of Harvestore were transferred to ESPC on unsubstantiated and legally incorrect statements of employees of Smith.[6] The trial court relies first on the deposition testimony of David Saalfeld, in which the following limited discussion of the corporate structure of ESPC occurred:

Q. What did you understand that division to be?

A. It was an extension from what Harvestore Products had been and it—then A.O. Smith made some change to it to restructure it.

Q. When you say it was an extension of what Harvestore Products had been, what products are you referencing?

A. The Harvestore Product lines of structures, unloaders, and automation.

N.T., 7/26/12 at 18.

The trial court further relies upon the deposition transcript of John Farris who testified:

Q. And is it your understanding that in 1997 A.O. Smith ESPC was created by the combination of Harvestore and Peabody—Peabody TecTank?

A. Yes.

Q. And did—well, did ESPC then carry on its books certain of the assets of Harvestore and Peabody TecTank?

A. Yes.

Q. And what about the liabilities of each of those companies, were those also transferred over to ESPC in 1997 when it was formed?

---

[6] Trial Ct. Op. at 3.

- 11 -

A.    Yeah . . .  yes, because the two companies were dissolved and a division was formed.

Q.    And the division was now ESPC?

A.    Correct.

Q.    And it was composed of the assets and liabilities of the former Harvestore and Peabody TecTank; correct?

A.    Yes.

N.T., 9/21/12 at 12.

These factual statements are contrary to basic corporate law. The correct analysis of the corporate structure of Smith and ESPC is set forth in the APA.  The trial court's assumption that ESPC held the Roller Mill liability and therefore, could transfer it to CST is erroneous.

In light of its mistaken application of basic principles of corporate law, the trial court erroneously concluded that ESPC held the Roller Mill Liability and transferred it pursuant to APA.  Therefore, I would reverse the trial court's decision to grant summary judgment in favor of Smith and against CST.

Since CST did not appeal the trial court's decision to deny CST's Motion for Summary Judgment, I will not address whether the trial court properly denied it.

**Conclusion**

Accordingly, I would conclude that the trial court erred in granting summary judgment in favor of Smith.

President Judge Emeritus Bender, Judge Lazarus, and Judge Ott join this concurring opinion.